ISAAC J. VANDERWERKER AND JOHN SNYDER *v.* THE VER-
MONT CENTRAL RAILROAD COMPANY.

*Arbitrator's award, for what causes invalidated. Construction of
various provisions in contract for building railroad. Conclu-
siveness of engineer's estimate. Extra work. Authority of
assistant engineer to bind the company. Defect in work, when
a bar to a recovery for the performance of it. Costs.*

A mistake in a matter of fact, arising from the arbitrators misjudging, either in weighing
evidence or in construing the contracts or admissions of the parties, will not invalidate
his award; but only such a mistake as shows that he was misled, and deluded and so far
misapprehended the case that he failed to exercise his real judgment upon it.

The provisions of a contract between a railroad company and a contractor for building a
portion of its railroad that the " engineer shall be the sole judge of the quality and
" quantity of all such work herein specified, and from his decision there shall be no
" appeal," and that in case of alterations " such allowances or deductions shall be made
" therefor as the engineer may judge fair and equitable to both parties," constitute the
engineer a sole umpire; and, if the company furnish a suitable engineer, no recovery
can be had, for work done under such a contract, without, or beyond his estimate, with-
out the most irrefragible proof of mistake in fact, corruption in the engineer, or positive
fraud in the opposite party in procuring an under estimate.

A provision in such a contract that no claim shall be made or allowed for extra work " unles
" the same shall have been done in pursuance of written contracts or orders signed
" by the engineer," and that all claims for work done under such written contracts or
orders shall be presented for settlement within a given time,—will bar a recovery for any
extra work not supported by the directions in writing of the engineer or presented for
allowance within the time specified.

This rule is not varied by the fact, that, previous to doing the extra work, directed by the
engineer, the contractors were assured by the local or assistant engineer, who communi-
cated the direction from his chief, that they should receive extra compensation there-
for;—it appearing that said assistant had no authority to bind the company by any such
promise.

In this case, the plaintiffs by their contract, among other things, were to do a certain amount
of rock excavation in Winooski village, for which the defendants were to pay them a speci-
fied price per yard. In the performance of this part of the contract a due regard to the
safety of the inhabitants and buildings in that vicinity required, and the defendant's
engineer directed the placing of logs of timber upon the rocks at every blast. *It was held
that the expense of so doing was either a part of the ordinary expense of excavating the
rock in a reasonable and prudent manner, which the contract must be understood to
have bound the plaintiffs to do, and was therefore included in the price per yard specified
in the contract;—or that it was for extra work, and therefore not to be allowed unless
supported by the written directions of the engineer.*

The plaintiffs contracted with the defendants to build certain abutments, and in the contract
it was agreed that certain stone might be used. The stone agreed upon were used, and
after the completion of the work a defect was discovered in it, but it did not appear

whether it was owing to the quality of the said stone, or to the badness of the workmanship. *Held* that the plaintiffs were entitled to recover the contract price unless it was shown that the defect was in the workmanship.

Questions in regard to the taxation of costs, in order to be revised in the supreme court, must appear from the exceptions, to have been passed upon by the county court and ordered to supreme court for revision.

BOOK ACCOUNT. The only items in the plaintiffs' account which were considered in the supreme court were,

| | | |
|---|---|---|
| Item 4. | Excavating for turn-table at Winooski depot, | $49.42 |
| " 5. | Taking out ice on track on Sec. 3, | $194.51 |
| " 6. | Cutting down hill at road crossing, | $17.24 |
| " 8. | Logging blasts, &c. | $720.00 |
| " 10. | 755 28-100 yards bridge masonry on Sec 3, | $2,259.84 |
| " 13. | Earth excavation on Sec. 5, between grades and slopes, 3349 yds. at 12 cents, | $401.88 |
| " 14. | Earth excavation below sub-grade and in angles of the cut, 41,769 yds. at 62 cents, | $25,896.78 |

in reference to which the following facts were reported by the auditor.

On the 26th of August, 1846, the plaintiffs with one James Vanderwerker, entered into a contract with Sewall F. Belknap, to construct sections 3, 4, 5, and 6, in division 1, of the defendants' railroad; the said Belknap having entered into a contract with the defendants for the construction of their whole road. In June, 1849, a part of the work on said sections having been done, the said Belknap died, and the said James Vanderwerker being then dead, the further performance of said contract ceased. Soon thereafter, the plaintiffs and defendants agreed that the plaintiffs should proceed and finish said work by the 1st of November, 1849, on the same terms, and the defendants pay them therefor, on the same terms and conditions as stated in the contract with Belknap. The plaintiffs on the 1st of July, 1849, entered upon the execution of this agreement, and the account presented by them was for the work thereafter done. In the progress of their work, the plaintiffs made an embankment for a depot on section 3, as directed by the defendants' engineer. In December, 1849, when that section was nearly completed and when the ground was much frozen, the engineer found it best to change the location for the turn-table and directed an excavation

therefor, in said embankment. The defendants then told said engineer, they should rely on extra pay therefor, and they kept an account of its actual cost, which was the amount charged as the 4th item in their account, and presented a bill in writing therefor. The defendants' engineer estimated and allowed the same to the plaintiffs as so much excavation at contract price, which amounted to $38.35. If, under these circumstances, the plaintiffs were in law entitled to recover the actual cost of the work, the auditor found for them to recover the amount charged $49.42; but if they were only entitled to recover the contract price as for so much earth excavation, or if by law and the terms of the contract the plaintiffs were bound by the estimates of the defendants' engineer, the charge should be allowed only at $38.35.

The plaintiffs failed to complete their work by the 1st of November, 1849. Sometime in November, when a part had been completed so that it could have been gravelled up from sub-grade to grade, the plaintiffs applied to the defendants' engineer for a place to obtain gravel from for this purpose, and he applied therefor to an adjacent land owner, who declined allowing it to be taken. While the plaintiffs were at work on the unfinished part of their work the weather became very cold, and water ran into this part and formed ice. In December, application for gravel was made by the plaintiffs and by the defendants' engineer, to another land owner, and he consented to its being taken. It then became necessary to take out said ice in order to gravel up said road; and this the plaintiffs did at the expense charged in the 5th item of their account, and presented their bill therefor to the defendants' engineer, who declined to allow anything for it. If under these circumstances the plaintiffs were entitled to recover anything for said service, the auditor found the amount to be $194.51 as charged.

A public highway crossed the railroad at grade, and when the plaintiffs excavated in that vicinity to sub-grade, this highway was, by direction of the defendants' engineer, left unexcavated, so as to be passable by the public, until the time for laying the rails for the road. The rails were laid as soon as the plaintiffs had so far completed their sections that the same could be done, and the engineer then ordered the highway pass excavated down to sub-grade and gravelled up to grade. This was done by the plain-

## DECEMBER TERM, 1854.    133

Vanderwerker et al. *v.* Vermont Cent. R. Co.

tiffs, but the ground was then frozen very hard, and the cost of making said excavation constitutes the 6th item in their account. The plaintiffs claimed this amount at the time, but the defendant's engineer refused to allow it as the whole excavation on the road, including this, was estimated by him, and allowed plaintiffs at the contract price. The question in reference to this item, whether the plaintiffs were entitled to recover the actual cost of this service being the amount charged, or were limited to the contract price for excavation, or concluded by the estimate of the engineer, was submitted to the court.

On section 3, was a heavy solid ledge cutting situated in Winooski village, and to protect the inhabitants and buildings there from injury, common and ordinary prudence required that logs of timber should be placed on the rocks at every blast, and the engineer directed it done. The plaintiffs did it, and for so doing made their 8th charge. The timber procured by the plaintiffs for that purpose was paid for by the defendants. The auditor reported that if by law the plaintiffs were entitled to recover for that service, the amount should be $333.33.

The plaintiffs' written contract did not include bridge masonry; but they agreed with the defendants' engineer to construct the abutments for a highway bridge, over the railroad, on section 3, at $3.00 per cubic yard, and did construct the same, which were estimated and allowed by the engineer as containing 482 yards only, which was the amount indicated by the original plan. In erecting said abutments the plaintiffs were to use such of the stone which had been blasted out of the rock cutting on that section as were suitable. The plan furnished by the engineer was such as would have been suitable, had the bridge abutments been erected of such stone as were described in the original contract; but on putting in the stone agreed on, it was regarded as necessary to make the walls and wings of said abutments thicker and heavier than the plan indicated, and was so done. The engineer saw the work as it progressed, and when he disapproved of any stone, or of the manner in which it was laid, it was removed or relaid as he directed; and the plaintiffs put in the stone taken from the cut, but, when directed, procured more suitable stone for the capping. The abutments and wings actually contained 590 yards of masonry. One of the abut-

ments, since it was finished and estimated by the engineer, has not kept its place, but had bilged and cracked, but whether that was owing to the nature of the stone, or badness of the workmanship did not appear. The auditor reported that if, under these circum-stances, the plaintiffs were entitled to recover for the whole amount of the contents of said abutments, their 10th charge should be allowed at $1770.00 for 590 yards; if only the amount estimated by the engineer, the allowance should be $1446.00, for 482 yards; and if deduction should be made for the imperfection of said work there should be deducted therefor, the sum of $120.00.

In reference to the items 13 and 14, the auditor reported that they were for excavations claimed by the plaintiff to have been made by them beyond and exceeding in quantity the estimate of the defendants' engineer, which were charged and allowed in item 12; that he did not find such an excess, but that he found the following facts. While the plaintiffs were excavating part of their section agreeable to the plan first furnished, it was found that quicksand run in from the bottom of the slope and rendered the bottom wet and miry, which it became necessary to prevent. The engineer directed the plaintiffs to go back on what they had done, and cut out the track very much wider at the bottom and make a vertical side in the slope, and take out the material, including the quicksand which had run in, down to sub-grade, and then to fill with earth and gravel, and thus make and leave the road of the same dimensions with the original plan, and so continue this process though the excavation then remaining to be made; and this was the most economical plan for making the excavation there suitable for a railroad track. This order was communicated to the plaintiffs, from the defendants' chief engineer, through the local or assistant engineer, whom the plaintiffs informed, that they should not perform that service at contract price for earth excavation, nor unless paid therefor as extra and he told them they should be so paid. The plaintiffs performed the work, and the quantity or number of yards excavated by them in so doing was correctly estimated by the defendants' engineer and is included in the 12th item of the plain-tiff's account; yet such was the nature of the material removed by the plaintiffs under this order, that it cost them and was worth $3000 beyond the contract price, and more than it would have cost

to have made the excavation on the original plan. There was no evidence before the auditor that the assistant engineer had any power to make any contracts for the defendants, but on the contrary it was shown that he had no such power. These claims were rejected by the engineer of the defendants, on the ground that all the excavation was made under the contract and that it had been estimated and allowed for at contract prices. The right of the plaintiffs to recover said sum of $3000 was submitted to the court.

The written contract between the plaintiffs and Belknap contained the following provisions :

9th specification. " The location of any portions of the road " may be altered whenever the engineer may consider such altera- " tion necessary and expedient, and if such alteration be made on " any section, or part of a section, before the commencement of " work thereon, the contract prices shall remain the same ; if " made afterwards, such allowance or deduction shall be made as " the engineer may deem fair and equitable to both parties.'

15th specification. " No claim for detention, on account of the " work not being laid out in season, shall be allowed unless the " engineer shall have been notified in writing of the want of such " work, at least three days previously to the commencement of such " alleged detention. Nor shall any claims be made or allowed for " extra work unless the same shall have been done in pursuance " of written contracts or orders signed by the engineer ; and all " claims for work done under such written contracts or orders, or " on any other account, shall be presented for settlement, on or about " the beginning of the month following that in which said work " may have been done,—or at any other time within three days " after the engineer shall have demanded the same ; and in case of " failure so to present them, the contractor shall forfeit all such " claims and hereby is pledged not to present them in any way " afterwards."

\* \* \* \* " and the engineer shall be the sole judge of the " quality and quantity of all said work herein specified, and from " his decision there shall be no appeal."

Upon the report of the auditor, the county court, November

Term, 1854, — PECK, J., presiding, — rendered judgment, *pro forma*, for the largest sum reported by the auditor. Exceptions by the defendants.

*Phelps & Chittenden*, for the defendants.

*W. W. Peck* and *E. Harvey*, for the plaintiffs.

The opinion of the court was delivered, at the circuit session in September, 1855, by

REDFIELD, CH. J. In this case the contract is directly between the plaintiffs and the defendants, but resting in parol, the written contract between these plaintiffs and Belknap being referred to, as containing the terms of the contract, between these parties. Work was begun under this contract, on the 1st day of July, 1849, and was, by the terms of the contract, to have been completed by the 1st day of November, after.

No. 4, in the plaintiffs' account, is the first item upon which any question arises. The only question properly arising here is, whether the plaintiffs are bound by the estimate of the engineer. The contract contains the usual clause that " the engineer shall be the sole judge of the quantity and quality of the work, herein specified, and from his decision there shall be no appeal," and in *Herrick's* case it was considered upon great deliberation, that the engineer thus became the sole umpire, and that unless the company failed to furnish suitable engineers to make the estimates, no recovery could be had for work under such a contract, until estimated by the engineer, and after an estimate by the engineer, no recovery could be had beyond that sum, unless upon the most irrefragible proof of mistake in fact, or positive fraud in the opposite party in procuring an under estimate, or corruption in the engineer, and in such case the appropriate tribunal for redress, was a court of equity. But we regarded it as now, within the province of a court of law, to afford redress, in such cases, this not by any means ousting the chancery jurisdiction, which was, at one time, the exclusive resort, in such cases. But in the present case there is nothing to show any mistake in fact of the engineer. The estimate is therefore conclusive. The cases showing what precise mistakes will avoid

an award are reviewed at length in Mr. Smith's Notes to Caldwell on Arbitration, ed. 1853, pp. 153–177. The case of *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 339, is the most elaborate review of the earlier cases upon this subject extant. Much light is afforded in regard to the present state of the law upon this perplexing subject, in *Kleine* v. *Catara*, 2 Gallison C. C. R. 74, and in the very satisfactory opinion of the court, in *The Boston Water Power Co.* v. *Gray*, 6 Metcalf, 31.

The only apparent difficulty seems to arise in attempting to define what precise mistake in matter of fact, by the arbitrator, will invalidate the award. It is obvious, that to allow every mistake in fact, to avoid the award, if clearly proved, would be in effect, to examine the original controversy, upon its merits, and thus render all awards nugatory. I apprehend the true rule upon this point is that no mistake, in matter of fact, depending upon the misjudgment of the arbitrator, whether in weighing evidence, or the construction of contracts, or written admissions, is of any avail; for these matters are properly submitted to the discretion of the arbitrator and concluded by the award. The mistake must be one which shows that the arbitrator was misled, deluded and so far misapprehended the case, that he failed to exercise his real judgment upon it. The most familiar illustration is a mistake in computation. The use of a false measure, or a false weight is similar. Other illustrations may be supposed. But enough has been said, to show, that no such mistake is shown, in the present case.

Item No. 5, being rejected by the engineer, falls within the rule before laid down, as by the contract all deviations from the contract, in the manner of doing the work, by alterations of plan, &c., are to be referred to the judgment of the arbitrator, and such allowances or deductions made, " as the engineer may deem fair and equitable to both parties." And all claims for extra work, were by the terms of the contract, to be supported, by the directions in writing of the engineer, and presented for allowance in a given number of days, nothing of which appears to have been done in regard to this claim. It may be asked how the contractor may have redress, if the work is clearly extra work, and the engineer refuses to give orders in writing. He must of course either decline doing it, or be content to have it treated as ordinary work

under the contract, if it come within the general terms, and extension of the contract, else such a restriction will afford no such security to the company, as it was obviously intended to do, and as, by its terms, the parties must have expected it would.

Item No. 6, for digging the highway when frozen, seems to be of the same character, if indeed it was not really the fault of the plaintiffs, that the work was not done at an earlier period, and before the ground became so frozen, which would itself form another ground of defence.

Item No. 8, for logging the blasts in Winooski village, is either the ordinary expense of excavating the rock, in a reasonable and prudent manner, which the contract must be understood to have bound the plaintiffs to do, and so not any ground of claim against the defendants, beyond the amount of excavation, at contract price, which is included in the estimates of the engineer; or it is extra work under the contract, and so required to be supported, in the manner specified in the contract, and should be disallowed, because not so supported; or else it requires a new contract with the defendants, express or implied, which is not attempted to be shown, except through the agency of the engineers, who seem to be restricted by the express terms of the contract, from imposing any extra charges upon the defendants, for any work done within the general range of the contract, unless by orders in writing.

The tenth item is for deficiency in the engineer's estimate of abutments for highway bridge. This claim, in many particulars, seems to stand, upon a different footing from any of the others. It is for a kind of work not included in the contract, reduced to writing, (bridge masonry,) according to the finding of the auditor, although the written contract between the orignal firm and Belknap does seem to include such masonry. But we are to suppose, from the finding of the auditor, that in the contract between plaintiffs and defendants, bridge masonry was excluded. The provisions of the written contract will not extend to this contract. This is found to have been a special contract, for this particular work, made by defendants by their engineer with plaintiffs, and there is nothing to show that there was any agreement, in regard to the conclusiveness of the engineer's estimates, or extra work. And as the engineer was authorized to make the contract, and had the over-

sight of the work, he would of course, be justified in directing deviations, as the work progressed, which he did, in consequence of which, the number of cubic yards in the structure was increased from 482 to 590. The engineer, in estimating the work, followed his original plan. The deviation from the plan was necessary and acquiesced in by the engineer, in consequence of the defective nature of the stone used, and which it was agreed should be used. Under these circumstances it seems to us the plaintiffs should recover, according to the amount of work done, and that there is nothing in the facts found by the auditor to preclude them. It does not appear whether the bilging of the work was in consequence of the defect of workmanship or of the material used. The auditor expressly says so. The plaintiffs should therefore recover the contract price, unless it be shown that the defect was in the workmanship, as the plaintiffs are not responsible for any defect in the materials used.

Items thirteen and fourteen are for under-estimates of the engineer, and amount to the very considerable sum of $26,000 in round numbers. The auditor does not find any such under-estimates; but does find that in consequence of the manner, in which it was requisite to do the work, to prevent the quicksand running into the pit, by filling in earth and gravel upon the bed of the road, which the auditor finds was the most economical mode of making the road bed keep in form, the plaintiffs incurred expense to the amount of $3,000 more than it would cost to make the same excavation without this precaution. The plaintiffs, when informed of this order of of the engineer, by the resident engineer of the section, told him they should not consent to do the work, in that mode, without extra compensation, and the resident engineer assured them that they should receive such extra compensation. But the auditor finds he had no authority to bind the company, by any such promise, as we have already considered in a former part of this opinion. And the plaintiffs took no steps to perfect any claim for such extra allowance, according to the terms of the written contract, and the engineer when the claim was presented, decided against it. This seems to bring the claim within the rules laid down by us in regard to some of the former items of this account.

The case of *Thayer* v. *this defendant*, 24 Vt. 440, is precisely

in point as to this last item. The assistant engineer there told the plaintiff " He should have his pay for it; the company would pay him for the same;" and so is the decision in *Herrick's* case. This disposes of all the questions arising in the case. Judgment reversed and judgment for the smallest sum reported by the auditor except for the item of bridge abutments, for which the plaintiffs are entitled to the largest sum reported.

No copy of the exceptions in the county court was furnised, and I cannot see that any question in regard to the taxation of costs was reserved. Upon the brief of one of the counsel allusion is made to such a question, but it could not be revised here, unless it appears, by the exceptions in the county court, to have been passed upon by that court and ordered to come here for revision.