THE DENVER, SOUTH PARK & PACIFIC RAILWAY CO. V. RILEY.

The provision in a grading contract, for submitting to the chief engineer of one of the contracting parties, for final decision, disputes upon matters referred to in the contract, is valid and binding. It is simply the declaration which contracting parties have a right to make, as to what shall be the mode of proof, or what shall constitute sufficient or conclusive evidence, in case such disputes arise. And the decision of the engineer thereon, in the absence of fraud or palpable mistake, is final.

*Appeal from District Court of Arapahoe County.*

THE facts are stated in the opinion.

Messrs. TELLER and ORAHOOD, for appellant.

Messrs. BROWNE and PUTNAM, for appellee.

HELM, J. Appellee brought this action in the court below to recover from appellant a balance claimed to be due for grading seven sections of its railroad. This work was done under a written contract, similar in form to those generally adopted in like cases. Among other provisions in this contract is the following:

" And it is further agreed, that, in case any disputes or differences shall arise between the company and contractor, *as to the construction or meaning of the agree-*

*ment and specifications, or sufficiency of the performance of any work to be done under it, or price to be paid,* all such disputes or differences shall be referred to the engineer, who shall consider and decide the same; and his decision shall be final to the parties, who hereby submit all and singular the premises to the award and arbitration of the engineer, and agree that the same shall be final and conclusive between them to all intents and purposes whatsoever; and it is further agreed that the submission to the engineer, touching all matters herein contained agreed to be submitted to him, shall be deemed, considered and taken as an essential part of this agreement, and not revocable by either of the parties thereto."

This specification is perfectly valid and binding. It is simply the declaration which contracting parties have a right to make, as to what shall be the mode of proof, or what shall constitute sufficient or conclusive evidence, in case disputes arise upon certain matters contained in the contract; provided the evidence so stipulated for be not illegal. *McMahon v. N. Y. & E. R. R.* 20 N. Y. 463; *Smith v. Briggs,* 3 Denio, 73; *United States v. Robeson,* 9 Peters, 371; *Wilson v. York & M. L. R. R. Co.* 11 Gill & Johnson, 73.

Appellee claims that the total amount of work done by him was underestimated by the engineer, and that consequently his compensation was less by several thousand dollars than it should have been.

His position is, and must be, that the aggregate amount of grading done under the contract is not one of the matters as to which the engineer's decision was to be final and conclusive. Upon this view of the contract adopted by the court below, he obtained his verdict. Upon this view alone could he have maintained his action; for the engineer had passed upon the measurements and fixed the amount of work performed. Appellee charges no fraud against the officer, nor does he aver or attempt to prove any such mistake on the latter's part as will vitiate

his determination of the question; these things being true, the engineer's decision would be final if the matter is covered by the italicised phrases in the above paragraph taken from the agreement.    *Howard v. The Alleghany Valley R. R. Co.* 69 Pa. St. 489; *Reynolds v. Caldwell,* 51 id. 298; *O'Reilly v. Keons,* 52 id. 214; *Condon v. South Side R. R. Co.* 14 Grattan, 302; *Vanderwerker v. Vermont Cent. R. R. Co.* 27 Vt. 130.

Our decision upon the errors assigned in this case must therefore be controlled mainly by the construction we shall give to this portion of the contract.    The engineer mentioned is the chief engineer of the appellant company.

The chief engineer of a company engaged in the construction of an extended line of railroad cannot be personally on the ground superintending the work of each of a number of grading contractors.    As shown by the record in this case, he is obliged to leave the immediate daily supervision of this work to deputy or assistant engineers; these deputies make the necessary measurements and computations from time to time, and report the same to their chief.    They represent the company, however, and disputes between them and the contractor concerning the work, are disputes between the *company* and contractor.    Such disputes, when referring to the specified matters, are, therefore, among the disputes or differences submitted to the chief engineer for arbitrament.

With this explanation, let us discover the true intent of the contracting parties in the foregoing language of the agreement.

It will be noticed that measurements of the amount of grading done are not specifically mentioned.    It will also be observed that while the "engineer in charge is to make a final estimate of all the work done," differences concerning this "final estimate" are not in words submitted to the final decision of the chief engineer; are

these matters so submitted, by a fair and reasonable implication from the above language employed in the contract?

Disputes on three questions or classes of questions are referred to the engineer for decision. *First*, as to the construction or meaning of the agreement and specifications. It would not be contended for a moment that this includes differences concerning a final estimate of the total amount of grading.

*Second*, sufficiency of the performance of any work to be done. This evidently relates to the character and not the quantity of work performed under the contract; there might be no dispute whatever concerning the number of cubic yards to a given piece of grading, yet very great difference of opinion as to whether the work was done in the manner provided for by the specifications.

*Third*, the price to be paid. Four different kinds of work in connection with the grading were mentioned in the contract, and a different price was payable for each, viz.: "for earth excavation, twenty-three cents per cubic yard; for loose rock, thirty-five cents per cubic yard; for solid rock, $1 per cubic yard; for extra hauling and over one hundred feet, two cents per cubic yard per one hundred feet."

It is obvious that in every section graded there would probably be more or less of each of these different kinds of excavation, and also a quantity of the hauling mentioned. The expense of constructing a section depended very largely upon the relative amounts of these different kinds of excavation. It was therefore of the first importance to determine this question, and settle which of the foregoing prices should be paid for a particular piece of work. This was also a matter about which there were likely to be differences of opinion between the contractor and the assistant engineer inspecting the work.

It seems to us the most reasonable conclusion, that the word "price," in the phrase under consideration, was

used by the contracting parties with reference to the question, *i. e.*, whether twenty-three or thirty-five cents, or $1, or what proportion of each, should be paid for a given quantity of grading.

It is true that the aggregate amount of compensation could not be ascertained without first making appropriate measurements; but the question whether a given piece of work is "earth excavation," "loose rock" or "solid rock," and, consequently, the price payable per cubic yard therefor, is answered by inspection and not by measurement; whether twenty-three cents or $1 shall be paid per cubic yard, is a question entirely separate and independent of the interrogatory as to how many cubic yards a piece of work may contain.

This conclusion concerning the meaning of the language adopted in the contract receives additional sanction from the considerations that the form used was doubtless prepared by attorneys for the appellant company, and that provision for submission to the engineer of disputes upon this question could easily have been placed in the agreement by language free from ambiguity.

The fact that it was not so embodied is an indication that the company did not intend to have it there.

We do not think the district court erred in its theory of the contract; therefore the evidence objected to was properly admitted, and the instructions fairly state the law applicable to the case. We conclude that the question as to whether the amount of grading done by appellant under the contract was underestimated by the engineer might properly be tried in this case. There was evidence upon this question on which the jury might rest the finding made; as to its sufficiency, they were the judges, and this is not one of those instances wherein we would be warranted in disturbing the judgment based upon their verdict.

It will therefore be affirmed.

*Affirmed.*