DENVER & NEW ORLEANS CONSTRUCTION CO. V. STOUT.

1. The phraseology of section 30 (Gen. Stats. 1883, pp. 187–8) is too vague and uncertain to warrant a construction which would exempt a corporation from suit save in that county in which its principal office is located or its principal business carried on.

2. Section 30 of the General Statutes should be construed in connection with section 24 of the Code of Procedure; if the county in which the plaintiff resides, or a county in which a contract was to be performed, is the proper county for the trial, the action may be properly brought in that county in the first instance.

3. It is a rule of code pleading that denials must be specific, and that it must clearly and unequivocally appear what the pleader intends to deny.

4. A stipulation in a contract with a railroad company for the manufacture and delivery of ties, that differences and disputes as to the sufficiency of the performance of the work, and the price to be paid therefor, should be referred to the engineer, *held* to be a valid and binding stipulation between the parties, and that one of the parties could not arbitrarily ignore or revoke the stipulation and resort in the first instance to the courts of law.

*Appeal from District Court of El Paso County.*

The facts are stated in the opinion.

Messrs. Wells, Smith and Macon, for plaintiff in error.

Mr. E. O. Wolcott, for defendant in error.

Beck, C. J.   Stout, the plaintiff below, brought this action against the defendant, the Denver & New Orleans Construction Company, to recover a balance alleged to be due him upon a contract to furnish cross-ties for the construction of the Denver & New Orleans Railroad.

All the questions presented here arose upon demurrers to the pleadings below.   We will first consider the demurrers to the defendant's pleadings.

Its first plea was in abatement of the action, on the ground that it should have been instituted in Arapahoe county, where defendant's principal office was located, and where its principal business was carried on.

Section 30 of the corporation statute (Gen. Stats. 1883, pp. 187–8) is cited in support of this position.   We are of opinion that the phraseology of this section is too vague and uncertain to warrant a construction which would exempt a corporation from suit, save in that county in which its principal office is located, or its principal business is carried on.   The language is specific that the summons shall be served in such county, if any of the officers named, or a stockholder, may be found therein. There is good reason for this requirement, especially in relation to railroad companies.   The business operations

and affairs of a railroad company usually extend along hundreds of miles of track, passing through many counties in a state, and the legislature may have enacted the provision requiring the summons to be served in the county where the principal office of- the company is located, or its principal business carried on, in order to render it certain that notice of the commencement of suits against such corporations will reach the proper department.

Situated as the defendant was, with a principal office in the same county in which its principal business was carried on, and where, also, its leading officers were to be found, the only provision in said section clearly applicable to the venue in this case is the *proviso:* "that the plaintiff may, in all cases, bring his action in the county where the cause of action accrued." All other provisions clearly relating to the venue occur in the way of providing for contingencies, as where no officer of the corporation can be found in the proper county on whom to serve process; or where no principal office is kept in any county, and there is no county in which the principal business of the corporation is carried on. No such contingencies occur in this case.

We agree with counsel for the plaintiff, that section 30 of the General Laws should be construed in connection with section 24 of the Civil Code, a later enactment. True, the latter section only purports to designate the *place of trial* of actions. The language employed, however, is general, including corporations as well as natural persons, and it would seem to be a safe proposition, that if the county in which a plaintiff resides, or a county in which a contract was to be *performed*, is the proper county for the *trial*, the action may properly be brought in that county in the first instance.

The second defense was a qualified denial that defendant entered into the contract set out in the complaint.

It avers that important parts of the agreement are

omitted, and clauses inserted which were not contained in the contract, but does not state what was omitted or what interpolated. It is a rule of code pleading that denials must be specific, and that it must clearly and unequivocally appear what the pleader intends to deny. Bliss on Code Pleading, sec. 331. The averments of this defense were too indefinite to comply with the rule; in fact they furnish no information whatever; hence the demurrer was properly sustained thereto.

The *third* defense was, that no final estimate of the work done by the plaintiff had been made, by the engineer mentioned in the contract, before the bringing of plaintiff's action.

By the terms of the contract set out in the complaint, payments became due upon inspections and estimates to be made by the engineer.

Upon completion of all the work in manner agreed upon, a final estimate was to be made by this officer, upon which the defendant was bound to pay the balance so found to be due.

If payments only matured upon the making of these estimates, it would seem that no right of action accrued until they were procured, unless a refusal of the inspector to act, or other matter in avoidance, was alleged.

Final payment only was to be made upon a final estimate.

The items entering into the final estimate were as follows:

All work done under the contract; all payments previously made thereon; and the ten per cent. retained from previous payments.

We think this defense *prima facie* good, and that the plaintiff should have been required to reply to it.

The amended and supplemental *fourth* defense alleges that, after the manufacture and delivery of all ties, disputes and differences arose between the plaintiff and defendant, as to the sufficiency of the performance of the

work under the contract, and the price to be paid there-
for, in which disputes the plaintiff claimed the same
moneys in the complaint demanded, and defendant de-
nied that said moneys or any part thereof were due to
plaintiff, and denied that the ties sued for were of the
kind mentioned in the specifications to the contract in the
complaint set forth.

It is then averred that the plaintiff was notified to at-
tend before the engineer in the contract mentioned, to
submit proofs, and to hear proofs of the defendant, con-
cerning said disputes and differences; that plaintiff failed
to attend, and that after sundry continuances for said
cause, with further notice to plaintiff, the said matters
were determined by said engineer, in the plaintiff's ab-
sence.

The plaintiff's first replication to this defense denies
that he knew, or at the time of the execution of the con-
tract was apprised, of any clause in it whereby disputes
and differences should be referred to the engineer. It
alleges that the agreement was partly printed and partly
written upon a printed form, intended and used for con-
tracts concerning the grading and construction of the
Denver & New Orleans Railroad, and not for contracts
for furnishing ties or other materials. Following this is
a denial that plaintiff ever made a contract whereby dis-
putes and differences between him and the defendant
should be referred to said engineer. The reply concludes
with an averment of the revocation, by the plaintiff, of
the supposed authority of the engineer.

Defendant demurred to this replication for insufficiency,
but the demurrer was overruled. We think it should
have been sustained. In *Denver, South Park & Pac.
R. R. Co. v. Riley*, 7 Colo. 494, we held a similar stipu-
lation of parties to be valid and binding.

An examination of the cases cited in defendant's brief
shows that stipulations of this character are extensively
used in contracts relating to the building of railroads and.

in other important contracts, and that their validity has been sustained by the most eminent courts. Where, as in the present case, an inspection and an estimate by the engineer in charge of the work are required by the terms of the agreement before either a monthly or a final payment may be demanded, such stipulation forms a condition precedent, and no right of action exists until such inspection and estimate are made. Or if a dispute arises between the contracting parties as to the quality or sufficiency of any work performed under the contract, the dispute must be settled in the manner and by the person provided by the contract before a resort may be had to another forum. *D. & H. Canal Co. v. Pa. Coal Co.* 50 N. Y. 258; *Jackson v. Cleveland*, 19 Wis. 400; *Hudson v. McCartney*, 33 id. 341; *United States v. Robeson*, 9 Pet. *327; *Reynolds v. Caldwell*, 51 Pa. St. 305; *Snell v. Brown*, 71 Ill. 142; *Humaston v. Telegraph Co.* 20 Wall. 27; *Fox v. The Railroad*, 3 Wall. Jr. 243.

Causes sufficient to excuse a resort to the arbiter designated in the agreement may arise, as where he refuses to act, or is prevented from acting by the opposite party. But one of the parties cannot arbitrarily ignore or revoke the stipulation, and resort in the first instance to the courts of law, as the authorities cited fully demonstrate.

In this case the record shows that the plaintiff had notice of the defendant's dissatisfaction with the work performed under the contract, before he commenced the present suit. It also shows that plaintiff was requested to attend before the engineer, at a time and place mentioned, for the settlement of the disputes which had arisen. Instead of so doing the plaintiff assumed to revoke the authority of the engineer, and then instituted this action against the defendant.

Referring to the grounds of avoidance set out in the plaintiff's said replication, they are believed to be wholly insufficient. The plea that plaintiff was not aware of the clause for the submission of questions, etc., at the

time of executing the contract, discloses either wilful ignorance or gross carelessness on his part. The allegations that the contract was drawn upon a printed form, intended for a different class of contracts, and that it was partly printed and partly written, is ambiguous and uncertain. In the first place, we are not informed what parts were written and what parts were printed, nor what this circumstance had to do with the plaintiff's want of knowledge. In the next place, there is nothing unusual in the character of the stipulations; as above stated, similar stipulations appear in all kinds of contracts, as a reference to reported cases amply shows. It is evident that the excuses assigned for executing, and at the same time for avoiding, the stipulation, fail.

Following the above is the attempted denial that plaintiff ever made a contract whereby disputes between him and the defendant should be referred to the engineer.

In view of the previous positions taken by the plaintiff with reference to this question, and in view of the additional fact that immediately following this denial is a supposed revocation by the plaintiff of the engineer's authority to decide disputes and differences arising under the contract, this denial must be regarded as qualified by the several statements just referred to.

A minor consideration is the plaintiff's objection, or rather that of his counsel, that no engineer is mentioned in the agreement. This objection is well met by the quotation from 14 Grat. 459: "An engineer is an indispensable agent and officer in the construction of a railroad." Here the defendant was engaged in building a railroad; as appears to have been done in cases reported in the books, the parties litigant designated as "the engineer," the officer who was to inspect and pass upon the plaintiff's work, accept such ties as should be manufactured in accordance with the terms of the contract; reject such as were not; make monthly estimates for payment as work progressed, less ten per cent., to be retained, and a final estimate

when all the work was done; deducting therefrom pre-
vious payments.   Being upon the ground furnishing ties
for the construction of the railroad, it is not likely that
a doubt ever rose in the mind of the plaintiff as to what
engineer was to inspect the ties to be furnished by him.
It is very evident that the officer referred to was the en-
gineer in charge of the work of construction, whatever
other titles he may have borne.

Another point made by plaintiff's counsel is, that there
was no ground for disputes or differences between the
parties, since the complaint shows that the plaintiff had
manufactured and delivered all the ties contracted for,
and the defendant had *accepted* them.

Nothing remained but to pay for them.   There re-
mained no basis for estimates, final or otherwise.

The only statement which we find in the complaint
upon which this argument may be based is as follows:
"That, in pursuance of said contract, he manufactured
and delivered to defendant two hundred and thirty-four
thousand cross-ties, at thirty-five cents each."   We find
nothing said about the defendant having accepted this
number as made in conformity with the specifications.
That a delivery by the contractor does not necessarily
constitute an acceptance by the company is evident from
the following provision of the specifications:

"Will be at owner's risk until accepted by the tie in-
spector, and when rejected must be removed from the
premises of the company, without delay, at the expense
of the owner."   The *acceptance* of ties, as provided for
in the contract, was made a distinct and different act
from their delivery.

The complaint in the present case avers neither an
acceptance of the ties by the engineer, nor an estimate by
that officer of the amount due the plaintiff, nor is any
reason or excuse given for the failure to observe these
conditions.

So far as the attempted revocation of the stipulation

was concerned, we think the action taken by the plaintiff was wholly without effect.   Such a stipulation is founded upon a consideration which enters into the contract, and, in the absence of fraud in procuring the contract to be signed or otherwise, is irrevocable.   It is unlike a submission to arbitration, which may usually be revoked at any time before award made.   "That rule falls with the reason for the rule," as said by Mr. Morse in his work upon Arbitration and Award, p. 231.

It is not reasonable to say that parties may execute important contracts like the one before us, raising no objections to the mode of determining disputes which may arise thereunder, or until disputes have actually arisen in the execution of the contract, and that they may then revoke the authority given to determine the same.

The law is that "when the parties in the contract fix on a certain mode by which the amount to be paid shall be ascertained, the party that seeks the enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect; that he cannot compel the payment of the amount claimed unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so."   *Canal Co. v. Coal Co.* 50 N. Y. 266; *Herrick v. Belknap*, 27 Vt. 673.

"Having deliberately and of his own free will made choice of a person as fit and competent to decide, and by whose determination he has agreed to abide, it is but reasonable and proper that the contractor should be held to the performance of his agreement."   *Hudson v. McCartney*, 33 Wis. 343.

It is unnecessary to discuss the question of interest.   It is certain that the plaintiff was not entitled to recover interest for delays occasioned by his own defaults.

The judgment is reversed and the cause remanded for further proceedings.                           *Reversed.*