## No. 11,699.

### Dutton and Kendall Company *v.* Hoffman.

Decided January 23, 1928.   Opinion modified February 20, 1928.

Action to recover for labor performed under contract. Judgment for plaintiff.

## *Reversed.*

1. CONTRACT—*Construction—Engineer's Estimate.* Where the proposal of a subcontractor to do excavation work contained the words, ''you to furnish engineering at your expense,'' it is construed to mean only that he did not assume the burden of employing engineers to fix the lines and grades for the work he was to do, and the contention that he was not bound by the final estimate of the engineer under the provisions of the principal contract, of which he had full knowledge, is overruled.

2. *Subcontractor—Principal Contract.* Where a subcontractor had full knowledge of the provisions of the principal contract at the time he made his proposal for doing work thereunder, it is held, under the facts disclosed, that they were adopted by and made a part of his subcontract.

3. PLEADING—*Amendments.* Amendments are largely within the discretion of trial courts.

4. CONTRACT—*Construction—Engineer's Estimates.* In an action to recover for work of excavation under contract, it is held, under its terms, that monthly approximate estimates by the engineer of the amount of work performed, were subject to change in the final estimate.

5.    *Engineer's Estimates—Conclusiveness.* Where a contract provides
that the final estimate of an engineer shall be conclusive evidence of
the amount of work performed, it will be so regarded in an action to
recover under the contract, unless attacked by pleading and proof
sufficient to justify the setting aside of an award of an arbitrator.

6.    *Engineer's Estimate—Conclusiveness.* Where a contract provides
that the final estimate of an engineer shall be conclusive evidence of
the amount of work performed under its terms, to justify the setting
aside of such estimate it is necessary that the pleading and proof es-
tablish that the engineer did not exercise an honest judgment, or that
he acted arbitrarily, capriciously and in bad faith.

7.    *Engineer's Estimate—Instruction.* In an action by a subcon-
tractor to recover from the contractor for excavation work, his con-
tention that he was not bound by the provisions of the principal
contract—of which he had full knowledge—to the effect that engi-
neer's monthly estimates were approximate only and that the final
estimate should be conclusive, is overruled, and an instruction of
the court based on such theory, held erroneous.

*Error to the District Court of the City and County of
Denver, Hon. George F. Dunklee, Judge.*

Mr. JACOB V. SCHAETZEL, Mr. WALTER E. SCHWED, for
plaintiff in error.

Mr. EVERETT OWENS, Mr. ROBERT EMMET LEE, for de-
fendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE defendant in error (plaintiff below) obtained a
judgment for $6,673.68 against the plaintiff in error (de-
fendant below).

The defendant had a contract with the City and County
of Denver for the construction of the Marston Lake
Filter plant. The plaintiff did grading under a sub-
contract. The judgment was for an unpaid balance found
due him, with interest thereon. The defendant pleaded a
counterclaim for money it claims to have over-paid the

plaintiff by mistake. The issues on the counterclaim were found against the defendant. There is no dispute as to the total number of yards of material excavated by the plaintiff. The controversy is over the classification of part of that material. For earth excavation, the plaintiff was to receive 50 cents per cubic yard; for rock excavation, $2 per cubic yard. If certain material, for which the plaintiff was paid $2 per cubic yard, was rock, as the plaintiff claims it was, the judgment should be affirmed; if it was earth, as the defendant claims it was, the judgment should be reversed. The defendant claims that the plaintiff is bound by the classification made in the final estimate; the plaintiff asserts that he is not. The contract between the plaintiff and the defendant was in the form of a written proposal by the former, accepted by the latter. The proposal is to do certain grading "according to plans and specifications, * * * you to furnish engineering at your expense." The parties disagree as to what are the specifications referred to. Exhibit D is a printed book. On the cover and on the first page is printed the title, "Contract and Specifications." It consists of several parts; one part being entitled, "Advertisement"; another, "Notice to Bidders"; another, "Proposal"; another (Part IV), "General Stipulations"; the next (Part V), "Detail Specifications." The last part (Part VII) is the contract executed by the city and the defendant. It is on one page, and refers to and adopts as a part of the contract the preceding parts of the exhibit. Part IV ("General Stipulations") contains the following provisions:

Paragraph 29 provides that all subcontractors shall in every respect be subject to the terms and provisions of the contract.

Paragraph 31 provides for monthly approximate estimates, by the chief engineer of the board of water commissioners, of work done, and for the payment of 85 per cent of the value of such work (estimated approximately), upon such engineer's written statement to the city.

Paragraph 33: "It is hereby agreed and understood by and between the parties to this contract that the prices and amounts to be paid under said contract shall be computed from the quantities of the work and materials which shall have been furnished and done, as the engineer's final measurements of the work shall determine, the monthly estimates presented being but approximate; and that no claims growing out of misconception of the quantities or kinds of works, or of any errors in the approximate statement thereof in the monthly estimates, shall be made, or be allowed or considered valid."

Paragraph 43 concerns the final estimate by the chief engineer.

Paragraph 44: "It is understood and agreed by the parties hereto that the final estimate of the engineer shall be conclusive evidence of the amount of work performed by the contractor under and by virtue of this agreement, and shall be taken as the full measure of the compensation to be received by the contractor.   *   *   *"

Paragraph 46: "Only upon completion of the work in strict accordance with these specifications, will it be accepted by the engineer; such acceptance will be in writing and final payment shall be based on the date thereof."

Repeatedly, in Part IV ("General Stipulations"), that part is referred to as "specifications." Thus, in paragraph 44, " *   *   * performance of all work in this specification and agreement"; and in paragraph 46—the final paragraph—" *   *   * in strict accordance with these specifications."

The plaintiff's proposal says, "I will furnish bond and insurance at my expense, you to furnish engineering at your expense." The plaintiff insists that the provision concerning engineering excludes from the plaintiff's contract the provision in Part IV making conclusive the final estimate of the chief engineer of the board of water commissioners. We do not agree with this contention. Section 14 of Part IV is headed, "Contractor to do own

Surveying * * *." It requires the contractor "to maintain his own surveying force and set his own lines and grades according to the locations and elevations as shown on the drawings or given by the engineer," i. e., the chief engineer of the board of water commissioners. It imposes upon the contractor the cost of doing so. It seems to us that the purpose of those words in the plaintiff's proposal was to make it clear that, in adopting and incorporating into his contract the specifications in Part IV, the plaintiff did not assume the burden of employing engineers to fix the lines and grades for the work he was to do, and that the cost thereof should be paid by the defendant, as provided in section 14. Exhibit D was before the plaintiff at the time he made his proposal. The several parts are bound together, constituting one book. The title, "Contract and Specifications," gave notice of the contents. The plaintiff knew that he was entering into a subcontract. The supposition that he believed that his contract would entitle him to have classified as rock, material that as between the contractor and the city was classified as earth, thus fixing his compensation at $2 per cubic yard for the very work for which the contractor could receive only 95 cents per cubic yard, cannot seriously be entertained. If he did so believe, he was mistaken. That he knew that he was bound by the provisions in Part IV of Exhibit D, is made evident by several circumstances. The monthly estimates, according to which he was paid from time to time, were first approved, as he alleges in his complaint, "by the said board of water commissioners." In paragraph 9 of the second defense, the defendant alleges "that the payments so made by the defendant to plaintiff from time to time during the performance of said contract, were made upon approximate monthly estimates as provided in said Exhibit D and after the approval of said approximate monthly estimates by Burton Lowther, chief engineer for said board of water commissioners or James H. Fuertes,

consulting engineer for the water purification for said board." In his replication, the plaintiff admits the allegations in paragraph 9, and alleges "that all of the work that was performed and paid for was on the estimates made by Walter A. Sumner, the engineer in charge, under written authority from James H. Fuertes, the consulting engineer, and the board of water commissioners, which estimates were all approved by James H. Fuertes, the consulting engineer, Burton Lowther, engineer for the board of water commissioners, and approved of at the regular meeting of the board of water commissioners. All of which estimates were thereafter sent to the auditor of the City and County of Denver, and then paid to the said defendants." This was in accordance with the requirement of Part IV of Exhibit D. In paragraph 8 of the second defense, the defendant alleges that the plaintiff was required by the terms of his contract to complete the work "in accordance and subject to" the provisions of the plans and specifications, "and that said specifications are in words and figures as set forth in Exhibit D, attached hereto and made a part hereof, and principally on pages 53 to 153, both inclusive." Those pages contain Part IV, "General Stipulations," and Part V, "Detail Specifications." In his verified replication, the plaintiff "admits the allegations" in paragraph 8 of the second defense. The plaintiff did not amend his replication, or even ask leave to do so. His attorneys say, in their brief, that this last admission "was made inconsiderately and unintentionally." Amendments are largely within the discretion of trial courts. Application to amend should have been made to the court below. Regardless of this particular admission, we hold that those provisions of Part IV, above quoted, were adopted by, and made a part of, the contract between the plaintiff and the defendant, and that the payments made to the plaintiff from time to time were only monthly estimates that were intended to be, and were, approximate only and subject to change in the final estimate by the chief engineer for the board

of water commissioners. The finding of the chief engineer in his final estimate is conclusive, unless attacked by pleading and proof sufficient to set aside the award of an arbitrator. *Denver, S. P. & P. Ry. Co. v. Riley,* 7 Colo. 494, 4 Pac. 785; *Denver & N. O. Const. Co. v. Stout,* 8 Colo. 61, 5 Pac. 627; *Empson Packing Co. v. Clawson,* 43 Colo. 188, 95 Pac. 546; *Ferguson v. Christensen,* 59 Colo. 42, 147 Pac. 352; *Cook v. Foley* (C. C. A., 8th Circuit) 152 Fed. 41; *McGregor v. J. A. Ware Const. Co.,* 188 Mo. 611, 87 S. W. 981; *Gray v. Cotton,* 166 Cal. 130, 134 Pac. 1145; *Hughes v. Model Stoker Co.,* 124 Md. 283, 92 Atl. 845; *Berger Mfg. Co. v. Crites,* 178 Mo. App. 218, 165 S. W. 1163. To set aside such finding of the chief engineer, it was necessary to plead and prove that the engineer did not exercise an honest judgment, or that he acted arbitrarily, capriciously, and in bad faith. *Ferguson v. Christensen,* 59 Colo. 42, 147 Pac. 352. No such averments are found in the plaintiff's pleadings; no such issue was tried; no such issue was submitted to the jury.

In the final estimate, the chief engineer finds that the total number of cubic yards of rock excavated is 3,275. Of this, the defendant claims that it excavated 502 cubic yards and that only 2,773 cubic yards were excavated by the plaintiff. The plaintiff claims that he excavated 8,000 cubic yards of rock. The jury found a verdict for the contract price of the full amount of the work that the plaintiff claims to have done, less the total amount he admits having received on account. In other words, the verdict was for the full amount claimed by the plaintiff. It was awarded upon the theory that the provisions in Part IV of "Exhibit D," to the effect that the monthly estimates are approximate only and subject to change, and making the final estimate conclusive, did not form a part of the plaintiff's contract with the defendant. The instructions given by the court to the jury were based upon that erroneous theory.

The evidence tends to show that the material in question was of such a character—all of it was removed with

a steam shovel, without any blasting—that its classification as earth or rock was difficult. At first, several of the monthly approximate estimates classified the material as rock, and the city paid the defendant, and the defendant paid the plaintiff, on the supposition that it was rock. Later, the rock classification was disallowed, and the material was re-classified as earth. In the final estimate, the material was classified as earth, and the city allowed and paid the defendant therefor as for earth excavation only, deducting from the final payment the amount it had overpaid the defendant upon the monthly approximate estimates classifying the material as rock. In its counterclaim, the defendant seeks a similar adjustment with the plaintiff, by asking judgment against the plaintiff for the overpayments it claims to have made upon the same monthly approximate estimates. The issues on the counterclaim were submitted to the jury on the same erroneous theory upon which the issues on the complaint were submitted.

In their briefs, counsel for the plaintiff complain that the chief engineer, in making his final estimate, acted arbitrarily; but, as we have said, no attack upon the final estimate was made in the plaintiff's pleadings, and no such question was submitted to the jury.

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with the views herein expressed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS, and MR. JUSTICE CAMPBELL concur.