SHANNON, Chief Judge.
The defendants below have filed two appeals from the final decree rendered below. By previous order of this court these appeals were consolidated for all purposes and all pending ■ motions were carried over to the consideration of the case on its merits. At the outset, therefore, we shall dispose of the pending motions.
Final decree herein was rendered on November 16, 1961. On November 24, 1961, Appellee Hardrives filed petition for rehearing. On December 21, 1961, while Hardrives’ petition for rehearing was pending, defendants filed notice of appeal. Then, on January 12, 1962, the chancellor entered an order denying Appellee Har-drives’ petition for rehearing and setting supersedeas bond in the amount of $80,-000.00. Being in doubt as to the validity of the appeal, defendants filed a second notice of appeal on February 16, 1962. Now pending is a suggestion by appellants that this court lacks jurisdiction over the first appeal, No. 2984, on the ground that it was taken prematurely, since there was pending below an undisposed post-decretal motion. Coupled with the suggestion is a motion that this court set over to appeal in No. 3090, the supersedeas bond filed below, in the event the appeal in No. 2984 is dismissed. Additionally, Appellee Hardrives has filed a motion to dismiss the second appeal, No. 3090, on the ground that because one appeal was pending, the second is unauthorized.
Appellants’ suggestion is well taken and the appeal in Case No. 2984, commenced by filing notice of appeal on De *361 cember 21, 1961, is hereby dismissed on the authority of Seiferth v. Seiferth, Fla.App.1960, 121 So.2d 689, since an appellant cannot be said to have waived an unadjudicated motion filed in the lower court by the ap-pellee, because to do so would allow an appellant to deprive an appellee of a ruling and the incidental right to cross-assign error. Cf. Bannister v. Hart, Fla.App.1962, 144 So.2d 853; Guarria v. State Road Department, Fla.App.1960, 117 So.2d 5; and Frank v. Pioneer Metals, Inc., Fla.App. 1959, 114 So.2d 329.
Appellants’ motion to set over to the appeal in Case No. 3090, the supersedeas bond filed and approved below on February 8, 1962, is hereby granted. The motion of Appellee Hardrives to dismiss the appeal in Case No. 3090 is denied in view of our ruling as to Case No. 2984.
We proceed now to the merits of this litigation. Edelblut Construction Company, Inc., and United States Fidelity and Guaranty Company appeal from a final decree in the amount of $65,074.02 in favor of Free & Son, and in the sum of $58,345.37 in favor of Hardrives of Indian River, Inc., appellees.
The parties and the history of this litigation, as taken from the final decree entered below are as follows: The parties involved in the three suits originally filed are Gilman C. Free and Jack W. Free, doing business as Free & Son; Edelblut Construction Company, Inc.; Hardrives of Indian River, Inc.; the City of Vero Beach; Metropolitan Casualty Insurance Company of New York, surety for Gilman C. Free and Jack W. Free, doing business as Free & Son; and United States Fidelity and Guaranty Company, surety for Edel-blut Construction Company, Inc.
In March of 1958, the City entered into a prime contract with Edelblut which provided for sewer system improvements and a sewage collection system. After the contract was entered into with the City, Edelblut entered into a subcontract with Free. Later Free entered into a subcontract with Hardrives. Edelblut, Free and Hardrives all entered upon the performance of their contracts. A dispute arose between Edelblut and Free concerning the measurements to be used for payment by Edelblut to Free. Hardrives and Free ceased work under their respective contracts and in due time the above referred to suits followed. 1
In the first suit, filed September 18, 1958, Hardrives sued Free to recover damages for breach of contract. In the second suit, filed January 13, 1959, Free sued Edelblut to recover damages for breach of contract. The third suit, filed April 21, 1959, was brought by Free against Edelblut and Har-drives, seeking a declaratory decree and an order staying the above mentioned law actions. Upon hearing, an order was entered staying further proceedings in said law actions until further order of Court The City, Metropolitan and USF&G were added as parties to the suit. Later, an order was entered transferring the law actions to the chancery side of the Court, consolidating the three suits for trial and merging them into a single suit, and allowing the parties in the law actions time within which to appropriately amend their pleadings or to file additional pleadings, if desired, in the chancery suit, to fully comprehend their respective claims contained in their pleadings in the law actions.
Free, in its second amended complaint, alleged in detail the work performed and materials furnished by it pursuant to the contract and sought a money decree against Edelblut and USF&G therefor, together with interest and costs.
Hardrives, in its second answer, counterclaim and cross-claim, alleged in detail the work performed and materials furnished by it pursuant to the contract and sought a money decree against Free, Edelblut, Metropolitan and USF&G therefor, plus interest, cost and statutory attorney fees.
Edelblut, in its counterclaim against Free and Metropolitan alleged that because of the nonperformance of Free and because of *362 Free’s refusal to perform its contract, Edelblut sustained certan damages and sought a money decree against Free and Metropolitan therefor, together with interest and costs.
Edelblut, in its counterclaim against the City, sought a money decree against the City for the balance alleged to be due on the contract price in the sum of $38,120.26.
The City, in its amended answer to the counterclaim of Edelblut against the City, alleged that after the commencement of this action, and the filing of its original answer herein, it was indebted to Edelblut in the sum of $36,844.06; that after the filing of said answer and the taking of testimony in this cause, because of the refusal of Edelblut and its surety to comply with the provisions of the prime contract, it was necessary for the City to enter into a contract with Swords Brothers-McDougal, Inc., to complete the work and that the City became obligated to Swords Brothers-Mc-Dougal, Inc., in the sum of $19,560.05 therefor; that the City claims a set-off in the sum of $19,560.05 against the amount of $36,844.06 the City owed Edelblut, leaving a balance due Edelblut in the sum of $17,284.01.
The final decree, which grants judgments against the appellants is challenged for the following reasons: 1) The wording of the subcontract documents shows, as a matter of law, that Edelblut’s payment to Free and Free’s payment to Hardrives were to be limited to payment for pavement replaced up to a three-foot width. 2) Even if the prime contract’s width limitation on payment was properly not considered a part of the subcontract, the chancellor erred in awarding payment to Free and Hardrives in excess of the total yardage measured by the resident engineer. 3) The chancellor erred in awarding to Hardrives damages in excess of those allowed by Section 255.05, Florida Statutes, F.S.A. 4) The chancellor erred in not reducing the liability of appellants to Free by the amount appellants were held to be liable to Hardrives.
It is, therefore, our task to determine whether the contracts are explicit insofar as they apply to the matters involved in this controversy.
In the contract between the City and Edelblut it is provided, in part, as follows:
“6-09. PAVEMENT REMOVAL AND REPLACEMENT—
“(a) Measurement — The number of square yards of replaced pavement will be computed using the mean width of replacement multiplied by the mean length, except that the limiting width to be used in the computation shall be three feet (3').” ,
In the contract between Edelblut and Free & Son, there are these provisions:
“ * * * and the parties hereto being desirous of subcontracting to parties of the second part certain portions of the aforementioned contract relative to paving requirements under the terms and conditions submitted in said contract between party of the first part and the City of Vero Beach, Florida, a municipal corporation,
* * * * * *
“2. Parties of the second part are to do all asphalt paving required to fully complete the job in accordance with the specifications in thé contract between the party of the first part'and the City of Vero Beach, Florida, a municipal corporation. Party of the first part will pay parties of the second part for performance of this contract in current funds as follows: Three and 92/100 ($3.92) Dollars per square yard for all paving laid other than paving laid by the State Road Department. * * * It is specifically covenanted and agreed that measurements used as basis for-payment under and pursuant to this contract shall be those measurements furnished by the Resident Engineer of the City of Vero Beach, Florida, a municipal corporation.
* * * * * *
*363 “4. It is further covenanted and agreed that, should the actual pavement replacement as contained in contract between party of the first part and the City of Vero Beach, Florida, a municipal corporation, exceed three (3) times the yardage measured by the Resident Engineer of the City of Vero Beach, Florida, per specifications of said contract, then all paving done by parties of the second part under and pursuant to this contract shall be paid for at the rate of One and 31/100 ($1.31) Dollars per square yard.”
In the contract between Free & Son and Hardrives there are certain provisions similar to those in the contract between Edelblut and Free & Son, and for the purpose of exactness, we will set out the material provisions of the contract as:
“ * * * and the parties hereto being desirous of subcontracting certain portions under their contract dated the 25th day of March,-1958, with the said Edelblut Construction Company, Inc., a Florida corporation, to party of the second part hereunder, under, the same terms and conditions relative to paving requirements submitted in said contract between the parties of the first.part and Edelblut Construction Company, .Inc., with the consent of the said primary contractor, Edelblut Construction Company, Inc., as hereinafter evidenced.
* * * * * *
*' * * * same being specifications set forth in the contract between said Edelblut Construction Company, Inc. and the City of Vero Beach, a municipal corporation. Parties of the first part will pay party of the second part for performance under this contract and terms and provisions of contract with the City of Vero Beach herein-before referred to in current funds as follows: Three and 60/100 ($3.60) Dollars per square yard for all paving laid other than paving laid by the State Road Department. * * * It is specifically covenanted and agreed that measurements used as basis for payment under and pursuant to this contract shall be those measurements furnished by the resident engineer of the City of Vero Beach, Florida, a municipal corporation.
******
“3. It is further covenanted and agreed that should actual pavement replacement as contained in contract between Edelblut Construction Company, Inc. and the City of Vero Beach, Florida, a municipal corporation, exceed three (3) times the yardage measured by the resident engineer of the City of Vero Beach, Florida, per specifications of said contract, then all paving done by party of the second part under and pursuant to this contract shall be paid for at the rate of One and 31/100 ($1.-31) Dollars per square yard.”
It can be seen that in the prime contract between Edelblut and the City, the City was obligated to pay Edelblut $4.00 per square yard for paving replacement “computed using the mean width of replacement multiplied by the mean length, except that the limiting width to be used in the computation shall be three feet (3').” The subcontracts between Edelblut and Free & Son and between Free & Son and Hardrives recited that portions of the prime contract were being subcontracted “under the terms and conditions submitted in said contract” and these subcontractors agreed to perform the paving work “in accordance with the specifications in the contract.” Edelblut, quoting from the appellant’s brief, received payment from the City for paving replacement performed by these subcontractors on the basis of measurements made according to the limiting width provision, namely, that in measuring the square yards of pavement made, the width was limited to three feet. Free & Son and Hardrives contend that they were entitled to payment from Edel-blut for all paving replaced, including pavement in excess of the three-foot width, notwithstanding that Edelblut was receiving *364 payment from the City only for paving replacements limited to three feet in width. We are concerned here with whether or not the language of the contracts, other than the prime contract, is to be interpreted as a part of the prime contract insofar as it applies to the work which each agreed to do. The Supreme Court, in our opinion, has resolved this situation where the writing expressly refers to and sufficiently described another document. See United States Rubber Products v. Clark, 1941, 145 Fla. 631, 200 So. 385.
In Collins for Use and Benefit of Dixie Plywood Co. of Tampa v. National Fire Insurance Co. of Hartford, Fla.App.1958, 105 So.2d 190, this court speaking through Judge Kanner had this to say:
“Where a written contract refers to and sufficiently describes another document, that other document or so much of it as is referred to, may be regarded as a part of the contract and therefore is properly considered in its interpretation. Also where a contract expressly provides that it is subject to the terms and conditions of other contracts which are definitely specified, such other contracts must be considered in determining the intent of the parties to the transaction. * * *”
See also 7 Fla.Jur., Contracts, Sec. 79.
In Diana Stores Corporation v. M. & M. Electric Co., Fla.App.1959, 108 So.2d 486, the Third District followed this rule and determined that the amount of work to be performed by the subcontractor should be determined by examining the prime contract specifications.
The prime contract specifications insofar as we are here concerned are clearly incorporated into the subcontracts as to the method of payment and are a controlling part of the subcontracts. Dutton & Kendall Co. v. Hoffman, 1928, 83 Colo. 305, 264 P. 1092, involved a contract much the same as in the instant case. The subcontract provided for work to be done “according to plans and specifications.” The subcontractor took the position that he was not bound by the prime contract specifications which provided for payment according to measurements and classifications of material made by the engineer. However, the court said:
“ * * * Exhibit D [prime contract specifications] was before the plaintiff at the time he made his proposal. The several parts are bound together, constituting one book. The title, ‘Contract and Specifications,’ gave notice of the contents. The plaintiff knew that he was entering into a subcontract. The supposition that he believed that his contract would entitle him to have classified as rock, material that as between the contractor and the city was classified as earth, thus fixing his compensation at $2 per cubic yard for the very work for which the contractor could receive only 95 cents per cubic yard, cannot seriously be entertained. If he did so believe, he was mistaken. * * *»
From the subcontract, as well as the prime contract, it is apparent to us that Edelblut had contracted for a unit price of $4.00 per square yard of pavement replaced, and likewise, it is plain to us that in the Edelblut-Free contract Free had contracted at a price of $3.92 and Hardrives had contracted at the sum of $3.60. Both Hard-rives and Free were protected in the event that they were required to replace pavement of a greater width than three feet and this is taken care of in Paragraph 4 of Free’s subcontract and Paragraph 3 of Hardrives’ subcontract. In other words, they were both promised to be paid at the rate of $1.31 per square yard for all actual pavement replaced at the greater width. The provisions of these paragraphs are meaningless unless they were to be paid according to the prime contract’s specified three-foot width limitation until the actual yardage laid exceeded three times the yardage measured by the engineer within the limitation. In studying the prime contract *365 in connection with the two subcontracts, this court has come to the conclusion that the trial court was in error in its interpretation of the contracts herein involved in that, as this court holds, all the parties are bound by the specifications and payment clauses contained in the prime contract and for the purpose of arriving at the compensation of both Free and Hardrives, the chancellor should have employed the figures furnished by the resident engineer of the City of Vero Beach, Florida. ■
It is agreed by all parties that Hardrives will collect more than that to which it is entitled by the terms of the final decree. This situation can best be remedied upon reconsideration by the chancellor.
In view of this opinion the other questions raised by appellant have become moot.
Reversed.
ALLEN, J., and SMITH, D. R., Associate Judge, concur.