## UNION PAC. R. CO. V. ANDERSON.

1. Under an agreement that one shall be paid such sum for services "as is mentioned in the annexed fee-bill," such bill specifying in some instances a minimum and maximum sum as a fee for services performed, "less fifty per cent. on the whole sum for such services as are rendered, and the actual cost at wholesale prices and cost of compounding medicines used, etc., subject to the approval of the superintendent of the road and surgeon of the division," such entire

11  293
19a 453

claim must be submitted for approval, and the right to recover the same depends upon such approval; it not appearing that the parties whose approval was necessary refused to act or acted fraudulently.

2. When the question of the intention of parties to an agreement requiring claims to be submitted to persons named for approval is in doubt, all facts relating to the selection of such persons, and their connection with the subject-matter to be approved, together with the contemporaneous construction of the agreement by the parties, may be considered.

3. When one in good faith objects to a bill presented for payment, and makes out a new bill for a reduced amount, which amount is received and such new bill receipted, this shows a settlement of a disputed claim, binding upon the parties.

## Appeal from Jefferson County Court.

THIS action was commenced by Joseph Anderson against the Union Pacific Railway Company to recover for services and medicines by him rendered and furnished under the following agreement:

"Memorandum of agreement made and entered into this 11th day of May, 1881, by and between the Union Pacific Railroad Company, party of the first part, and Joseph Anderson, M. D., party of the second part, both of Colorado, witnesseth, that in all cases of injury to employees of the said first party, and others for whom the said first party is responsible, at Golden, the said party of the second part, for and in consideration of the covenants and agreements hereinafter contained, agrees to perform all necessary surgical and medical services for the treatment of said injured persons if required to do so, and to furnish the necessary medicines and surgical appliances for the same. The said first party hereby agrees to pay the said second party the sum for such treatment as is mentioned in the annexed fee-bill, less fifty per cent. on the whole sum for such services as are rendered, and the actual cost at wholesale prices, and cost of compounding medicines used, payable at the expiration of treatment and discharge of patient, and subject to the approval of the superintendent of the road and surgeon

of the division. In all cases the said second party agrees to make reports to the said first party as may be requested by the said first party, and to use diligence and discretion in ascertaining and recording all facts bearing upon the cause of accidents, without extra charge. No indebtedness for the road shall be incurred without special permission before contracting.

"JOSEPH ANDERSON.

"This agreement will take effect on the 11th day of May, 1881, and remain in full force and effect until the 31st day of December, 1881.

"H. K. STEELE, M. D.,
"Surgeon Union Pacific Railroad, Colo. Cent'l.
"Approved:
"A. A. EGBERT, Supt. Colo. Div.
"S. D. MERCER, Surgeon, etc."

The fee-bill mentioned in the agreement was attached thereto, and for fifty-one items of service it specified a definite sum as a fee, and for four items of service it specified a minimum and maximum sum as a fee for services to be performed. It also contained the following stipulations: "Traveling long distances to be computed by the time consumed and services performed." "Any services not mentioned to be charged for upon a basis corresponding with this scale." It appears from the evidence that the plaintiff rendered certain services to the defendant under said agreement, and for such services charged the minimum rate specified in said fee-bill, except in a few instances where the services were not provided for in the fee-bill, and for such services his charges were proportionate to the rates named in the fee-bill; that he presented his bills for such services to the superintendent or to the division surgeon; that the defendant tendered to the plaintiff the full amount of each bill so presented, or a less sum than the full amount, and, in case a less sum than the full amount of the bill presented was tendered, then a bill covering such charges was made

out by the defendant for the amount so tendered, and
presented to the plaintiff at the time such tender was
made; and, with the exception of one bill, the plaintiff
received the amount so tendered, and signed a receipt
acknowledging the full payment of the bills so presented
by defendant at the time of making such tender; that
the amount of the bills, so presented by the plaintiff, ex-
ceeds the amount of the bills as receipted in the sum of
$105.10; that the amount of the bill for services rendered
to Jones and Eagan was $29.25, for which defendant
tendered to plaintiff the sum of $15, which plaintiff re-
fused to receive. The defendant offered in evidence a
letter written by the plaintiff, January 12, 1882, to the
chief surgeon of the company, in reply to one received
from him, in which letter he states that his resignation
was based on the supposition that the company wanted
its surgeon to work for a pass, and, after commenting
upon the requirements of the company, and their possible
effect upon his business, he says: "In regard to extraor-
dinary services, who is to be the judge? The surgeon in
charge, and parties cognizant of the facts in the case, or
the management in Omaha? Now, doctor, the fee-bill
under which we have been working, with fifty per cent.
off, has not, in many cases, paid me for my time and
trouble and expenses, not including loss of business at
home during my absence. My bills have often been cut
down twenty-five per cent. likewise. I will ask you to
make some definite proposition if you still desire my
services for the company, and not have it left to the op-
tion of parties who know nothing of the amount of the
services rendered. If the matter is left to the judgment
of those who are unacquainted with the facts, and we
may judge the future by the past, everything will be in-
definite and unsatisfactory for all." Plaintiff obtained a
judgment for the sum of $105.10, and defendant ap-
pealed.

Messrs. TELLER and ORAHOOD, for appellant.

Messrs. COE and SALES, for appellee.

RISING, C.   Counsel for appellant contend that, by the
express terms of the agreement between appellant and
appellee, the promise of the company to pay appellee for
his services is limited by, and is dependent upon, the ap-
proval of the bills presented by appellee for such services
by the superintendent of the road and the surgeon of the
division.   Counsel for appellee contend that, because of
the fact that in some instances a minimum and a maxi-
mum fee was prescribed by the fee-bill for items of serv-
ice to be rendered, it became necessary that some one
should be selected to determine the proper medium in
case the fee charged was above the minimum rate, and
there was a dispute about it; and that, by reason of such
necessity, certain officers of the company were selected
as arbiters of that matter.   That portion of the agree-
ment which relates to the question raised by the conten-
tion of counsel is as follows:. "The said first party hereby
agrees to pay to the said second party the sum for such
treatment as is mentioned in the annexed fee-bill, less
fifty per cent. on the whole sum for such services as are
rendered, and the actual cost at wholesale prices, and
cost of compounding medicines used, payable at the ex-
piration of treatment and discharge of patient, and sub-
ject to the approval of the superintendent of the road
and surgeon of the division."   Provision is here made
for payment to appellee for services rendered and medi-
cines furnished; the basis is given for ascertaining the
amount to be charged for such services, and for medi-
cines used; the time when such payment is made is fixed;
but something is subject to the approval of the officers
of the company.   What is it that must be so approved?
It seems clear to us, from the language used, that the
matter to be so submitted for approval is the claim to be
made by appellee for services rendered and medicines

used.   It is the entire claim that is to be submitted for
approval, and not that portion of it made for services
rendered for which the fee-bill prescribes a maximum
and a minimum fee.   There is nothing in the language
used showing, or from which it can be inferred, that the
claim subject to such approval is limited to items for
services for which there is a minimum and a maximum
fee.   The services for which the fee-bill prescribes a min-
imum and a maximum fee are not the only instances
where, under the provisions of the contract, appellee
must exercise his judgment in making charges.   The
charge for traveling long distances is to be made for time
consumed and for services performed; and for services
not mentioned in the fee-bill charges are to be made upon
a basis corresponding with the scale of the fee-bill.   For
the settlement of disputes arising upon such charges, the
necessity for an arbiter is as great as in cases when a
dispute arises in cases where the fee-bill specifies a mini-
mum and a maximum fee.   If it was the intention of the
parties to limit the requirement of approval to appellee's
claim for services for which no fee was definitely fixed
by the fee-bill, they were unfortunate in the use of words
to express such intention.   No such limit is expressed.
The requirement that the matter made subject to ap-
proval should be approved by the superintendent, as well
as by the division surgeon, goes to show that the limit
claimed by appellee was not intended.   If the items of
service for which no definite and certain charge is pre-
scribed by the fee-bill were the only matters to be sub-
mitted for approval, there would be no necessity for
associating the superintendent of the road with the divis-
ion surgeon; but, if the judgment of more than one per-
son was desired, a person would have been selected whose
education and experience had been such as to qualify
him to act in the premises.   The qualifications necessary
to enable a superintendent of the road to properly per-
form the duties of that position would not render him

qualified to correctly determine the proper charge to be
made for a surgical operation.   All the facts relating to
the selection of the persons whose approval is required,
and relating to the connection of such persons with the
subject-matter to be approved, may be considered for the
purpose of ascertaining the intention of the parties to
the agreement, when the question of such intention is in
doubt; for the reason that it must be presumed that the
parties acted consistently in providing means for the ac-
complishment of the end desired, unless such presump-
tion is precluded by the terms of the agreement.   It is
evident that the approval of the superintendent of the
road was not required because of his fitness to pass upon
the question whether the charges made by appellee, for
services for which no fixed charge had been agreed upon,
were too large; but, as to whether appellee had been re-
quired by appellant to render the services charged for,
and as to whether such services had been actually ren-
dered, the superintendent might be much better informed
than the surgeon of the division; and we think it clearly
appears from the agreement, and the circumstances of
the case to be considered, that the claims of appellee as
an entirety were made subject to approval; and among the
circumstances to be so considered is the interpretation
which the parties to the agreement have, by their con-
duct, given it; for it must be presumed that they acted
in accordance with their understanding of its require-
ments.   The acceptance by appellee of sums less than the
amount claimed by him, and his acknowledgment, upon
such acceptance, of payment in full for the services for
which his bills were rendered, although such acceptance
was under protest, is strong proof that he understood
that, to make his claims valid against appellant, it was
necessary for him to have the same approved by the per-
sons named in the agreement.   That appellee so under-
stood the agreement is also evidenced by his letter to the
chief surgeon.   What is said therein about not having

the matter of payment for services "left to the judgment of those who are unacquainted with the facts" has no meaning, except in connection with the idea that the writer desired some definite arrangement by which the payment for his services would not be "left to the option of parties who know nothing of the amount of the services rendered," and thus avoid the liability of having his bills often cut down in .the future as in the past.   The fact that appellant assumed the right to cut down appellee's bills, and to make out new bills for the same services, but for the reduced amount of the claim, which were substituted for the original bills, and were receipted by appellee, shows conclusively that appellant then construed the agreement as it now claims it should be construed.

It is claimed by counsel for appellant that, as to the receipted bills, the transaction shows a settlement between the parties of a disputed claim, and that such settlement is not in any manner impeached, and must be held binding upon the parties; and it is contended by appellee that the claims upon which payment was tendered and accepted were not doubtful, but were definite, certain and fixed, and therefore that a payment of part does not bar a recovery for the balance, notwithstanding such claims were receipted in full.   The question raised by this contention only affects such claims of the appellee as were cut down by appellant.   The action of appellant in cutting down such claims, with the fact that new bills for the same services, for the reduced amount, were substituted for the original bills by appellant, and presented to appellee to be receipted by him, clearly shows that appellant objected to the bills as presented.   Whether such objection was well founded or not does not affect the question, if such objection was made in good faith; and it does not appear that it was not so made; so that, independent of the provisions of the agreement relating to the approval of the claims of appellee, it is shown that, as to the receipted bills, appellee is not entitled to recover

for the difference between the amount of the bills as ren-
dered and the amount received by him thereon; and upon
this question there is no conflict in the evidence.  *Rail-
road Co. v. Allen*, 46 Ark. 217.  As to such claims, the
transaction between the parties amounted to an accord
and satisfaction.  *Berdell v. Bissell*, 6 Colo. 162–165.  In
determining what was to be submitted to the superin-
tendent of the road and division surgeon for their ap-
proval, we have assumed that it is well settled in this
court that it was competent for appellee to contract to
submit his claims to the approval of the persons named,
and that his right to recover must depend upon such ap-
proval.  *Railway Co. v. Riley*, 7 Colo. 494; 4 Pac. Rep.
785; *Construction Co. v. Stout*, 8 Colo. 61; 5 Pac. Rep.
627; *United States v. Robeson*, 9 Pet. 327.  No claim is
made that the persons whose approval was to be obtained
refused to act, or that they fraudulently or corruptly
withheld their approval, and the only question we are
called upon to pass in relation to such approval is, did
appellee agree to submit his claims as an entirety to the
approval of such persons?  We think he did so agree,
and that, under this construction of the agreement, there
is no evidence to support the judgment.

The judgment should be reversed and a new trial
ordered.

STALLCUP and DE FRANCE, CC., concur.

PER CURIAM.  For the reasons assigned in the forego-
ing opinion the judgment is reversed and the cause re-
manded.

*Reversed.*