[No. 4454.]

THE SUMPTER GOLD MINING COMPANY v. BROWDER ET AL.

1. **Conveyances—Warranties—Description.**

A mining company executed a bond and lease in which the property was described as all the ground belonging to the grantor, known as the S. and S. Mining claims excepting a strip of 125 feet of the east side of said claims and referring to the record for a more particular description and followed by the statement, "The said territory embraced within this lease and bond is claimed and said to be 175 by 3,000 feet." Held, that the conveyance was not a warranty of the entire 175 by 3,000 feet, but

that the intention was to convey so much thereof as the grantor owned, and where an examination of the records would have disclosed that the grantor did not own all the land included in the 175 feet strip and had excluded part of it in applying for a patent the grantee cannot recover for improvements placed upon the ground because of a breach of covenant to convey the entire 175 by 3,000 feet.

**2. Same—Construction by the Parties.**

Where there is any doubt of the meaning of a conveyance as to the description of the property conveyed, resort may be had to the construction, if any, which the parties to the conveyance made.

**3. Conveyances—Notice.**

A grantee in a bond and lease is charged with notice of the contents of the bond and an escrow deed as to the property intended to be conveyed.

*Appeal from the District Court of Teller County*

Mr. Arthur Cornforth, for appellant.

Mr. Charles C. Butler, for appellee.

Chief Justice Campbell delivered the opinion of the court.

The appellees brought this action against the appellant company to recover the value of improvements put upon mining property which they were working under a bond and lease from appellant. The bond and lease were given by the company to its president on two mining locations, and afterwards assigned by him to appellees. This cause of action is based upon appellant's breach of its covenant to convey because it did not own, and therefore could not convey, the full area which its contract called for. The two locations were laid along the course of the vein, the end line of one constituting the end line of the other, so that the total length was 3,000 feet. Appellant had previously disposed of a strip across the claims 125 feet wide. Its two locations conflicted with earlier valid ones, and in this application for a patent

appellant had excluded the territory thus in conflict; the result being that when the bond was given it did not own all of the territory within the strip 175 feet wide. The language of the bond describing the property to be conveyed is:

"All of the ground and territory embraced by and belonging to the Sumpter Gold Mining Company, known as the Sumpter and Stuart mining claims, excluding and excepting the 125 by 3,000 feet of the east side of said Sumpter and Stuart mining claims, known as the Corrington, et al., lease and bond, a better description of which can be found in book .... of the records of El Paso county and state of Colorado. The said territory embraced within this lease and bond is claimed and said to be 175 by 3,000 feet,   *   *   *   the location and bounds of said property being marked and described more particularly in the location certificate or patent thereof *   *   * ."

The result of the trial was a verdict for plaintiffs in the sum of about $2,800 and defendant brings the case here by appeal and has assigned numerous errors. Only one of them need be considered. The trial court instructed the jury that the defendant obligor was bound by its contract absolutely to convey a strip of ground 175 feet wide and 3,000 feet long upon the compliance by the obligees with the terms of the bond and lease. We think the interpretation of this bond by the learned trial judge was wrong. It is conceded that there was no intention to convey all of the territory within the exterior boundaries of the two locations, and certainly the conveyance was not to include a larger area than a strip 175 feet in width by 3,000 feet in length. Appellees insist that the expression, "is claimed and said to be 175 by 3,000 feet," is equivalent to a guaranty or warranty that such was the area to be conveyed.

Such language, however, must be taken in connection with other parts of the same instrument, and, so construed, we think the declaration simply means this, that while the obligor claims to own that quantity it does not agree to convey it, but only such portion thereof as then belonged to it. For in another part of the same sentence the territory which is the subject of the grant is described as all "belonging to" the obligor. Reference is also made in the instrument to another lease and bond and to matters of record. The receiver's receipt, but not the patent, was then on file in the office of the county recorder and the survey for patent in the office of the surveyor general. These sources of information, if resorted to by the obligees, which they were called upon to make, would have disclosed the fact that the defendant company did not at the time own all of the 175 feet strip and had excluded part of it in applying for a patent. Our conclusion, from the language of the instrument itself, is that the same is susceptible of the construction that the intention on the part of the obligor was to convey, and of the obligee to receive, only so much of the two locations as the obligor at the time owned. But if there is any doubt as to the meaning of the bond, resort may be had to the construction, if any, which the parties made. In this case, both the obligor and the original obligee construed the bond in the same way. It was made to Mr. Corrington, the president of the company. He swears that he knew that the company did not own, and did not intend to convey, all of the 175 feet strip. The escrow deed which the bond required to be executed and delivered within ten days was delivered to the bank before appellees acquired their interests, and it was a quitclaim deed and purported to convey only that part of the strip in question which the grantor then owned. It was prepared by, or under

the direction of, the obligee, and sent by him to the obligor for execution. In this deed is a reference to the survey number of the two claims. The receiver's receipt, in which this number is also inserted, was of record before the bond was given. We hold, therefore, both on the face of the bond and as the same was construed by the immediate parties, that it called for a conveyance only of so much of the particular property described as obligor owned at the date of the contract. While there is a conflict in the evidence as to whether actual notice of the shortage was brought home to the assignees before they acquired their rights—the original obligee asserting, and his assignees denying, it—still the latter are charged with knowledge of the contents of the bond itself and the escrow deed, and from these sources they would have learned that the obligor did not own, and neither it, nor their assignor, intended to convey, any part of the strip 175 feet in width and 3,000 feet in length except what then belonged to it. These plaintiffs were also charged with notice of the recorded receiver's receipt. They knew that the escrow deed which by the bond was required to be given had been executed before their rights accrued, and an inspection of these would have shown that the executed intention of the obligor was to convey, and that of the original obligee was to accept, a quit-claim deed of only such right or interest in the two mining claims as the obligor owned at the time of the execution of the bond.

It follows that the judgment of the court is wrong, and plaintiffs are not entitled to recover for the value of the improvements which they put upon the property. The judgment is, therefore, reversed and the cause remanded with instructions to proceed in accordance with the views herein expressed.

*Reversed.*