[No. 2275.]

FRANK V. BAUER ET AL.

1. **Practice in Civil Actions—Trial by Jury—Waiver.**

Where a party to an action fails to appear, he waives his right to a trial by jury.

2. **Evidence—Contracts—Revenue Stamps—Federal Statute Not Applicable to State Courts.**

The federal revenue act of 1898 (30 U. S. Stats. at Large, 455, section 14), which provides that no instrument required by law to be stamped shall be used as evidence in any court until a legal stamp shall have been affixed thereto, does not apply to state courts.

3. **Contracts—Forfeiture—Rescission.** ·

A deed to mining property was placed in escrow with an agreement that it should be delivered to the grantee if he should make certain stipulated payments, but upon failure of the grantee to make the payments to be returned to the grantor, and the agreement further provided for the forfeiture of all payments made by the grantee in case of his failure, also for the payment of certain royalties on all ores taken from the mine by the grantee. Held, that a failure of the grantee to make the payments and a demand by the grantor for the return of the deed, forfeited the right of the grantee to purchase the property but did not rescind the contract, and the grantor might proceed upon the contract in an action to recover of the grantee the royalties due thereon.

4. **Mines and Mining—Contracts—Royalties—Smelter Returns.**

In a contract to pay royalties upon the "mint or smelter returns" of all ores to be removed from a mine, where the parties to the contract construed it by paying royalty on the value of the ore at the smelter, less the smelting charges; in the absence of other evidence the court will adopt such construction as the meaning of "mint or smelter returns" in the

contract, rather than the value of the ore after deducting smelt-
ing charges and the charges for hauling, freight and switching
in delivering the ore to the smelter.

*Appeal from the County Court of Montezuma County.*

Mr. JOHN W. HELBIG, for appellant.

Mr. S. W. CARPENTER and Mr. C. M. KENDALL,
for appellees.

GUNTER, J.

Appellees, plaintiffs below, executed a deed,
grantee appellant, consideration $60,000.00, subject-
matter, mining property, and deposited the same with
one of appellees, a banker, upon terms stated in a
writing signed by appellant and appellees, of which
the following is a copy:

MANCOS, COLO., Aug. 9, 1899.

"To Mr. George Bauer, Banker,. Mancos, Colorado.

"You will please hold this envelope and inclosed
deed of Sundown mine in escrow under the following
conditions:

"If Joseph Frank pays into your hands the sum
of .$1,000.00 this 9th day of August, 1899, and the
further sum of $6,500.00 on or before the 20th of
August, 1899, and the further sum of $7,500.00 on
or before November 9, 1899, and the further sum of
$45,000.00 on or before May 9, 1900, then you will
deliver this envelope and inclosed deed to Joseph
Frank, or his agent; and if the said Joseph Frank, or
his agent, fails to pay the above-mentioned sums at
the time above given, or fails to make any one of
said payments as stipulated, then you are instructed
to return said deed to the signers thereof at their
request. It is further agreed that all improvements,
tools and so forth, in or outside of mine, except-
ing heavy machinery, are to be forfeited, together
with all moneys paid, should Joseph Frank fail to

make payments as above stipulated. It is also agreed that thirty-five per cent. royalty on mint or smelter returns of all ores removed are to be paid owners, and a statement given by Joseph Frank of all work and expenditure at the end of every month, said thirty-five per cent. royalty is to be applied on purchase price of the mine. We agree to the above conditions.''

Thereunder appellant took possession of the mine and operated it for a time. He made the payments maturing August 9 and 20, aggregating $7,500.00. Ore removed from the mine was shipped to the smelter and returns made September 18, 30, October 4, 7, 9, and 14, the aggregate of which was $7,296.99; that is, the value of the ore less treatment charges, as shown by the smelter statements, was $7,296.99. The smelter paid from this sum charges for hauling the ore from the mine to the railroad, also freight and switching charges. The aggregate of the hauling, freight and switching charges so paid amounted to $1,607.21, and the difference between this sum and the above aggregate of $7,296.99, to wit, $5,689.78, was paid by the smelting company to the shipper of the ore, appellant. Thirty-five per cent. of $5,689.78 is $1,991.42. Thirty-five per cent. of $7,296.99 is $2,553.94.

October 14 appellant, by his manager, wrote:

"October 14, 1899.

"To George Bauer, Banker and holder of escrow papers on the Sundown mine.

"Dear Sir:

"I herewith make you statement of all ores shipped from the Sundown mine during the month of September and inclose you a check for (35) thirty-five per cent. on the smelter returns, as per escrow conditions agreed upon.

| Gross pounds. | Net pounds. | Total value. |
|---|---|---|
| *  *  *  *  * | *  *  *  * | $7,296.99 |

35 per cent. royalty.. . ................$2,453.95

(Signed)                    JOSEPH FRANK,

By J. B. Page."

Under the head "gross pounds" in this letter are given in detail the shipments of ore covered by the smelter statements, commencing with September 18, and ending with October 14. Appellant states by the letter that he incloses a check for thirty-five per cent. "on the smelter returns as per escrow conditions," and fixes the smelter returns on this ore at $7,296.99, which, as stated, is the return from the ore less smelter charges, and not the return from the ore less smelter charges and the charges for hauling, freight and switching. He incloses a check for $2,453.94 as thirty-five per cent. on $7,296.99. On the escrow agent directing attention to this remittance as being $100.00 short of thirty-five per cent. on the smelter returns as shown by the letter, the agent of appellant, October 31, paid the $100.00. The parties here construed the meaning of the words "smelter returns," and acted on such construction; they construed them not as meaning the value of the ore less treatment charges and charges of hauling, freighting and switching, that is $5,689.78, but as the value of the ore less only the treatment charges, that is, $7,296.99, and appellant paid not $1,991.42, that is, thirty-five per cent. on $5.689.98, but $2,553.94, that is, thirty-five per cent. on $7,296.99. The materiality of this construction will appear as we progress.

This payment of $2,553.94 was applied on the installment of the purchase price, $7,500.00, falling due November 9. Appellant defaulted in the payment of the remainder of this installment. November 10 appellees demanded the return to them of the deed

from the escrow agent, and this was made. They also requested payment of royalty for the remainder of the ore mined and shipped to the smelter prior to that date. Nine smelter returns other than those contained in above statements were made from ore shipped October 11, 13, 18, 23, 26, 30, 31, November 8, and November 22. The aggregate value of this ore at the smelter, less smelter charges, was $3,599.38. Thirty-five per cent. of this amount is $1,259.78. The aggregate amount paid by the smelting company upon this ore for hauling to the railroad, freight on the railroad, and switching charges, was $1,160.99, which charges were paid by the smelting company from the value of the ore less treatment charges, and the difference, to wit, $2,438.39, transmitted to the shipper, appellant. Thirty-five per cent. of this sum is $853.44.

November 10 a demand was made upon appellant for payment of thirty-five per cent. royalty upon the eight smelter returns enumerated between October 11 and November 8, and such thirty-five per cent. was based upon the value of the ore at the smelter, less smelter charges. Payment was refused, for what reason does not appear. Suit was instituted December 26, 1899, to recover thirty-five per cent. royalty upon the *nine* smelter returns commencing with October 11, and ending with November 22. All of the ore for which had been shipped prior to November 8. Appellant answered denying the allegations of the complaint which presented the foregoing matters, and set up certain matters upon which he asked affirmative relief. The replication put in issue the affirmative matter of the answer. March 17 appellant filed his motion for a continuance in order that his deposition might be taken, as he would be absent at the time of the trial. The motion was supported by affidavit disclosing testimony that would be given by

the witness if permitted to testify. March 20, the court entered an order granting the continuance until March 27, but setting the case for trial on that date "on plaintiffs admitting that the evidence stated in the defendant's attorney's affidavit filed in support of said motion for continuance would be given by him, the said defendant, and that it be considered as actually given by him upon said trial."

Trial was had March 27, 1900, appellees appearing in person and by attorney, and defendant appearing neither in person nor by attorney. Trial was to the court, without a jury, and a judgment had for appellees in the amount prayed in their complaint, which amount is thirty-five per cent. upon the value of the ore, less treatment charges, as shown by the nine smelter statements last mentioned and legal interest thereon. Therefrom is this appeal.

1. No error was committed in trying the case without a jury. The pleadings presented issues of fact, the defendant (appellant) made no appearance at the trial, this waived his right to a trial by jury.

"Trial by jury may be waived by the several parties to an issue of fact with the assent of the court in the following manner: First, by failing to appear at the trial."—Mills' Ann. Code, sec. 178; *Leahy et al. v. Dunlap,* 6 Colo. 552.

2. The above contract upon which this action is based was not stamped. The Federal Revenue Act of June, 1898, section 14, provides that no instrument required by law to be stamped shall be used as evidence in any court until a legal stamp shall have been affixed thereto. If we assume the above contract to be within the statute—which we do only for the purpose of the ruling—the court did not err in admitting the instrument unstamped, and a sufficient reason for so holding is, the act does not apply to

state courts.—*Trowbridge v. Addoms*, 23 Colo. 518, 48 Pac. 535.

3. The above writing of August 9 constituted a contract between appellees and appellant. By it appellees agreed that the deed placed in escrow should be delivered to appellant upon his making the payments in the amounts and at the times stipulated therein. Appellant agreed that in the event he failed to make any one of said payments, the escrow agent, upon request of appellees, should return the deed to them, and that he (appellant) would forfeit all payments made and certain improvements upon the mining property. Appellant further agreed that he would pay to appellees thirty-five per cent. royalty on mint or smelter returns of all ores removed from the mine. Appellees agreed that the royalty thus paid should be credited upon the purchase price. This contract determined the rights and duties of the parties to it. Under it appellant operated the mine as above stated. The contract, provided what the rights and duties of the parties should be in the event appellant failed to make any one of the stipulated payments. In such contingency, if appellees requested the return of their deed, appellant forfeited his payments previously made, and certain improvements. By the contract appellees were given a right to the payments, and a right to the forfeited improvements. A failure to make the payments did not operate as a rescission of the contract, but merely terminated the right of appellant to purchase the mining property under the contract. The agreement to pay royalty was another section of the contract providing unconditionally the royalty appellant should pay upon the ores mined. There was no express or implied provision of the contract that the right to this royalty should be defeated by the failure of appellant to make any one of the payments pro-

vided in the contract. It was an unconditional agreement to pay royalty on the ore mined. After appellant defaulted in his payments, appellees had the same right to rely upon the contract for the recovery of their royalty as they had to claim the return of the deed or to claim ownership of the mining improvements, or ownership of the payments made. The contract remained in force as to all of these matters, it was at an end so far as it gave appellant the right to purchase the property at the rate stipulated in the contract. .

"But while it is essentially true that in case of a rescission the vendee may demand that he be restored to his original condition, it does not follow that a vendor who refuses to convey after such breach by the vendee, thereby rescinds. To the contrary, in refusing to convey after the vendee's default, he is not treating the contract as at an end, but is expressly standing upon it, and basing his rights upon its terms, covenants and conditions.—*Clock v. Howard & Wilson Colony Co.*, 123 Cal. 1, 14.

"It cannot be that, when one insists upon his stipulated rights under a contract, he indicates an intention not to be bound by it, and these cases must not be so understood."—*Aikman v. Sanborn*, 52 Pac. 729, 730; *James H. Rice Co. v. Penn. Plate Glass Co.*, 88 Ill. App. 407.

Claiming a return of the deed and a forfeiture of the payments and improvements did not work a rescission of the contract; it did not work a satisfaction of any sum due to appellees by appellant for royalties. At the time the forfeiture was claimed, the contract remained in full force as to its stipulation to pay these royalties. Appellant was delinquent upon the royalties and was indebted to appellees in the amount of such delinquency. The judgment was

for the amount of the delinquent royalties and legal interest.

4. Appellant contends that the thirty-five per cent. royalty should be computed upon the sum ascertained by deducting the charges for hauling, freight and switching from the value of the ore, less smelting charges. Appellees contend that the thirty-five per cent. royalty should be computed upon the value of the ore at the smelter, less the smelting charges. In other words, the controversy is as to the meaning of the words "mint or smelter returns," as used in the contract. No evidence whatever was introduced as to any custom defining the meaning of these words. In the absence of any evidence as to the meaning of smelter returns, we think it to be returns from the ore less the smelting charges. In this case, however, the parties themselves construed the contract in this respect by paying royalty upon the value of the ore at the smelter, less smelting charges; they thus defined the meaning of the words "mint or smelter returns," and this interpretation, in the absence of other evidence, we are justified in accepting.—*Union Pac. R. R. Co. v. Anderson,* 11 Colo. 293, 299; *Sumpter Gold Min. Co. v. Browder,* 31 Colo. 269.

We find no error in this record justifying a reversal.

Judgment affirmed.          *Affirmed.*