FLETCHER SCOTT, *Appellant*, vs. THE NATIONAL CITY BANK OF TAMPA, a corporation, and ADJUSTMENT BUREAU TAMPA ASSOCIATION OF CREDIT MEN, INC., a corporation, *Appellees*.

139 So. 367.

En Banc.

Opinion filed November 30, 1931.

*Henry E. Williams* and *C. W. Lawrence, Jr.*, for Appellant;

*McKay, Withers & Ramsey*, and *Sutton, Tillman & Reeves*, for Appellees.

ELLIS, J.—The Scott Grocery Company on October 13, 1927, executed a promissory note payable thirty days after date to the order of The National City Bank of Tampa for the sum of ten thousand five hundred dollars. As security there were deposited with the Bank three hundred shares of Clarence Saunders Corporation stock and two hundred shares of Scott Grocery Company stock and life insurance policy for ten thousand dollars on the life of

Fletcher Scott. These securities were described in the note, except that the note did not state that the life insurance policy was issued on the life of Fletcher Scott. The note was signed and indorsed by Fletcher Scott. It contained many provisions relating to the debt and securities pledged. There was an acceleration clause made dependent upon depreciation in the value of the securities pledged or dissatisfaction concerning them on the payee's part. Power was given to the payee or holder of the note to sell, assign and deliver the whole or any part of the securities or any additions thereto at private or public sale at the payee's option without demand, advertisement or notice of any kind which the signers of the note purported to waive. Provision was made that the proceeds of the sale of the securities after the payment of all expenses of sale including attorney's fees should be applied to the debt evidenced by the note and any excess should be applied to any other debt which the signers might owe the payee. It was provided that if in the judgment of the payee either party to the note, "whether maker, security or indorser" should become insolvent the payee might apply any funds or property on deposit with the payee.

The note also contained a provision that the payee might if it desired to do so "ignore all of the collateral features of this obligation, to look only to the personal liability of the parties hereto, and upon the breach or non-performance of any of the conditions hereof or upon the happening of any of the events herein provided against, to sue any or all, or any intermediate number, of the makers or endorsers hereof" etc. Protest and notice of protest and non-payment were waived.

The due date of the note was November 13, 1927.. On November 2, the sum of three thousand nine hundred thirteen dollars and six cents had been paid on the prin-

cipal. On November 10, 1927, the Scott Grocery Company made an assignment of its business and properties to Adjustment Bureau, Tampa Association of Credit Men, Incorporated in trust for the benefit of the creditors of the Grocery Company. The assignment was accepted but neither the oath of the assignor nor bond of the assignee were executed and filed in the office of the Clerk of the Circuit Court for Hillsborough County as required by Sections 6753-6755 C. G. L. 1927.

On the date the assignment was filed which was November 16, 1927, the National City Bank tendered its claim to the assignee against the Grocery Company in the sum of six thousand five hundred eighty-six dollars and ninety-four cents, the same being the balance due on the note.

On February 13, 1928, the National City Bank without notice to the complainant sold three hundred shares of the stock in the Clarence Saunders Corporation for the price of nineteen dollars and seventy-five cents per share which after deducting a transfer tax of six dollars and the cost of a telegram amounting to eighty-five cents netted the sum of five thousand nine hundred eighteen dollars but credited upon the note only five thousand three hundred and ninety-two dollars and fifteen cents, leaving unaccounted for according to the allegations of the bill exhibited by Fletcher Scott the sum of five hundred and twenty-six dollars. The securities deposited with the Bank and described in the note as collateral were the property of Fletcher Scott.

The Adjustment Bureau assignee made three distributions of ten per cent. each among the creditors of the Scott Grocery Company. As to the Bank that distribution was made on the basis of a balance due to the Bank by the Grocery Company of one thousand one hundred and nineteen dollars instead of the sum of six thousand five hundred and eighty-five dollars and ninety-four cents,

which was the amount due when the Bank filed its claim with the assignee.

On the 20th day of September, 1928, Fletcher Scott exhibited his bill in the Circuit Court for Hillsborough County against the National City Bank and the Adjustment Bureau, Tampa Association of Credit Men, Inc. The bill alleged the facts recited above. It also alleged that the complainant who signed and indorsed the note was merely an accommodation party, received no consideration for signing the note and the bank knew it when it accepted the note; that the securities deposited belonged to the complainant; that the assignee sold all the assets of the Scott Grocery Company for the sum of twenty-five thousand dollars cash and a deferred payment of five thousand dollars which if it has been paid is now in the hands of the Adjustment Bureau assignee.

It is alleged upon information and belief that the Bank and the assignee agreed that the assignee should pay the Bank its percentage of the distribution upon the basis of one thousand one hundred nineteen dollars and ignore the complainant's claim for the price at which the Bank had sold complainant's stock in the Clarence Saunders Corporation and that each party to the agreement knew that the security was the property of complainant and that he was merely an accommodation indorser for the Scott Grocery Company. That act, it is claimed, was in violation of the complainant's rights and done for the purpose of defrauding him.

The bill also alleges that the complainant has requested the Bank to file a claim with the assignor for the sum of six thousand five hundred eighty-six dollars and ninety-four cents, the amount due on the note before the application of the proceeds of the sale of the stock and the distribution of the percentage by the assignor and to become a party complainant in this cause, both of which requests

the Bank declined. It is alleged that the assignor is about to distribute the remaining assets of the Scott Grocery Company and seeks discharge from its liability as assignee.

The bill seeks an accounting by both defendants; that the assignor allow the Bank's claim of $6,586.94 and pay to the Bank its distributive share of the Scott Grocery Company's assets upon that basis and the surplus if any to complainant and that the Bank be required to file its claim with the assignor for such amount. The bill also prays that the Adjustment Bureau be declared an illegal assignee of the assets of the Scott Grocery Company for failure to comply with the statute hereinbefore mentioned and that the complainant have a lien upon the remaining undistributed assets of the Scott Grocery Company in an amount sufficient to reimburse him for all loss sustained on account of the accommodation indorsement of the Scott Grocery Company note, for an injunction restraining the assignee from disposing of the assets of the Grocery Company and for general relief.

A temporary restraining order was granted against the assignee as prayed.

Both the Bank and the Adjustment Bureau demurred separately to the bill. The demurrers were sustained, the temporary injunction dissolved and "*complainants*" were allowed until March rule day to plead. That order was made February 11, 1929.

On July 26, 1929, complainant appealed from the order sustaining the demurrers and dissolving the temporary injunction.

The demurrers were general, attacking the equity of the bill, the Bank contending that it has no interest in the controversy which should be between complainant and Adjustment Bureau as the Bank had a legal right to dispose

of the stock in the Clarence Saunders Corporation and apply the proceeds of the sale to payment on the note.

The Adjustment Bureau contending that the bill is without equity, that the note was a joint note of complainant and Scott Grocery Company and its terms cannot be varied, that all the actions of the assignor have been legal and that the Bank should not be joined as a defendant.

The Chancellor erred in sustaining the demurrers and dissolving the temporary injunction because the Adjustment Bureau as assignee stood in no more favorable position with respect to the note than either the Bank or the Scott Grocery Company as against either of whom the complainant was in the position of a surety. While the complainant signed the note and endorsed it the bill alleged that he did so without consideration and for accommodation which allegation the demurrer admits. The complainant was therefore merely a surety.

The assignee, assuming the assignment to be valid, took the title to the assigned property as trustee. The creditors were the *cestuis que trustent*. An assignment for the benefit of creditors existed at common law as a corollary to the legal axiom that the power to dispose of property as one may see fit where unrestricted by statute is a necessary incident to the ownership of property. In modern times assignments by debtors are regulated to a great extent by statute in many jurisdictions. See 2 R. C. L. 644.

The title which the assignee takes is no more than that which the assignor had. 2 R. C. L. 655.

The assignee is not in the position of a bona fide purchaser for value of the assigned property. The right of set off or counterclaim is unaffected by the assignment and is enforceable against the assignee as against the assignor. The rule has not been changed in this State by any statute which makes the assignee the representative of the creditors. See Dobbins v. Walton, 37 Ga. 614, 95 Am.

Dec. 371; Lowry v. Hitch's Assignee, 33 Ky. L. Rep. 573, 110 S. W. Rep. 833, 17 L. R. A. (N. S.) 1032 and note; 2 R. C. L. 656.

Whether the assignment was valid in view that it is intended as the act of the corporation is not determined. The rule is that unless otherwise provided by statute a corporate assignment must be executed by the board of directors at a meeting duly called for that purpose or be executed by an officer of the corporation duly authorized by a resolution of the board of directors. The consent of stockholders is unnecessary. See 2 R. C. L. 649 and authorities cited.

No such formality was observed in the execution of the assignment involved in this case nor was the statute observed in the matter of the assignor's oath and the bond required of the assignee as hereinbefore stated. In any event however the Adjustment Bureau, assignee, stood in no more favorable relation to the assets of the Scott Grocery Company than that corporation and such assets were subject to equal distribution among its creditors.

If Fletcher Scott, the complainant, was surety merely on the note to the Bank, his obligation was to pay if the Scott Grocery Company failed to pay. Upon breach by the principal of the contract the surety is liable. Thus where the condition is that the principal will pay one money the failure of the principal to do so constitutes a breach of the surety's contract so as to render him liable. See 50 C. J. 75.

The contract of the surety is made at the same time and usually jointly with that of his principal. The contract of the surety is a direct original agreement with the creditor or obligee that the thing contracted for shall be done. A surety is an insurer of the debt or obligation. See Northern State Bank v. Bellamy, 19 N. D. 509, 125 N.

W. Rep. 888, 31 L. R. A. (N. S.) 149; Kramph v. Hatz, 52 Pa. 525.

A surety may be sued as a promisor. See 28 C. J. 891.

The fact that the complainant was a mere surety on the obligation to the Bank therefore did not affect the latter's right to proceed under the terms of the contract and statute to subject the securities to the payment of the debt on default of the principal.

A surety is however a creditor of his principal. The law implies a promise on the part of the principal to indemnify his surety. See Gibson v. Love, 4 Fla. 217; Chamberlain v. Lesley, 39 Fla. 452, 22 South. Rep. 736.

The balance due upon the note when the Scott Grocery Company made the assignment was $6586.94 and the Bank filed its claim for that amount with the assignee and upon the subjection of the complainant's securities to the payment of that amount he became subrogated to the bank's claim upon the assignor's assets. In such case the assignee should have made a distribution upon that basis, but the bill alleges that the Bank and the assignee agreed to a distribution upon the basis of a much smaller claim namely the balance appearing to be due after the application to the debt of the proceeds of the sale of the stock less five hundred and twenty-six dollars thus practically eliminating the complainant as a creditor of the Grocery Company which neither had the right to do.

Section 6931 C. G. L. provides that where stock in a corporation is pledged as security of indebtedness the pledgee shall have the power to sell the same in such manner and on such terms as may be agreed upon in writing by the parties at the time of making the pledge, "provided, ten days notice of said sale be given to the party pledging the same."

The bill alleges that the Bank gave to the complainant no notice of the sale of stock. That allegation is admitted

by the demurrer as well as the allegation that the Bank failed to account for part of the proceeds of the sale which balance amounted to five hundred and twenty-six dollars.

The complainant's equity against the two defendants lies in the right to an accounting from them of trust funds held for complainant's benefit; the amount which the Bank might reasonably have obtained from the sale of the stock accounting for the surplus if any, and the subrogation of the complainant to the Bank's claims against the assignor for the amount due on the note when the assignment was made. See annotations to Crumlish Adm'r v. Central Improvement Co., 38 W. Va. 390, reported in 23 L. R. A. 120.

There is equity in the bill and the demurrers should have been overruled. The orders of the Chancellor are therefore reversed.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BROWN, J., concurs in the conclusion.