66 So.2d 54 (1953)
WARREN, Governor for Use and Benefit of HUGHES SUPPLY CO., Inc.,
v.
GLENS FALLS INDEMNITY CO. OF GLENS FALLS, N.Y., et al.
Supreme Court of Florida, Special Division B.
June 23, 1953.
Rehearing Denied July 27, 1953.
*55 Cross & Hawes, Gainesville, for appellant.
G. Warren Sanchez, Tallahassee, for appellees.
DREW, Justice.
The Suwannee County Board of Public Instruction entered into a contract to construct an elementary school building but did not demand or receive from the contractor the bond required by section 255.05, Florida Statutes, 1951, F.S.A. The contractor defaulted and as a result thereof Hughes Supply Company, Inc., was unable to collect for materials which it had furnished and which had been used in the construction of the school building.
Hughes Supply Company, Inc., brought suit against Glens Falls Indemnity Company of Glens Falls, New York, and United States Fidelity and Guaranty Company, of Baltimore, Maryland (sureties on the official bonds of all the Board members), and George A. Hicks, Board Chairman, to recover the loss on the theory that it was the ministerial duty of the school board members under the law to require the bond prescribed by section 255.05, Florida Statutes, 1951, F.S.A., referred to above, and that their failure to do so was a violation of their duty to "faithfully perform the duties of his said office" and thereby made the individual members of the school board and their bondsmen liable to it for the loss sustained.
The defendants below, appellees here, answered Hughes' contention by saying that section 235.32, Florida Statutes, 1951, F.S.A. (a part of the School Code), governs the type of bond required and that the school board fully complied with that section and with section 237.31(4), Florida Statutes, 1951, F.S.A. (another part of the School Code). The lower court agreed with the contention of the defendants below, dismissed the complaint and entered *56 final judgment against appellant. This appeal is from that judgment.
The following statutes or parts of statutes are pertinent to the discussion which will follow:
"235.32 Substance of contract; contractors to give bond; penalties. Upon accepting a satisfactory bid, the county board shall enter into a contract with the party or parties whose bid has been accepted, and such contract shall contain the drawings and specifications of the work to be done or the material to be furnished, the time limit in which the construction is to be completed, the time and method by which payments are to be made upon said contract and the penalty to be paid by the contractor for any failure to comply with the terms of said contract. The contractor shall furnish the county board with a bond, issued by a surety company licensed to do business in Florida, for one hundred per cent of the contract price. * * *"
"237.31(4) School contractors.  All contractors paid from school funds shall give bond for the faithful performance of their contracts in such amount and for such purposes as prescribed by law or by regulations of the county board or of the state board relating to the type of contract involved; provided, that it shall be the duty of the county board to require from every contractor a bond adequate to protect the school and school funds involved."
"255.05 Bond of contractor constructing public buildings; suit by materialmen, etc. Any person entering into a formal contract with the State of Florida, any county of said state, or any city in said state, or any political subdivision thereof, or other public authority, for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building, or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; and any person, making application therefor, and furnishing affidavit to the treasurer of the State of Florida, or any city, county, political subdivision, or other public authority, having charge of said work, that labor, material or supplies for the prosecution of such work has been supplied by him, and payment for which has not been made, shall be furnished with certified copy of said contract and bond, upon which, said person, supplying such labor, material or supplies shall have a right of action, and may bring suit in the name of the State of Florida, or the city, county, or political subdivision, prosecuting said work, for his use and benefit, against said contractor, and sureties, and to prosecute the same to final judgment and execution; provided, that such action, and its prosecution, shall not involve the State of Florida, any county, city or other political subdivisions, in any expense." (Emphasis supplied.)
First National Bank of Key West v. Filer, 107 Fla. 526, 145 So. 204, 206, 87 A.L.R. 267, was a suit brought by the holder of certain promissory notes issued by the Dade County Board of Public Instruction to charge the members of the board issuing them with personal liability thereon. The record in that case shows that the notes sued on were issued by the board to purchase a school site without first complying with certain statutory prerequisites which resulted in said notes being unenforceable against the board. In this case the Court said:
"Whenever there is a wrong there is a remedy. And the general test to determine whether there is a liability in an action of tort, is the question whether the defendant has by act or omission disregarded his duty. This applied to public officers who may become liable on common-law principles to individuals who sustain special damages from the negligent or wrongful failure to perform imperative or ministerial duties. Dillon on Municipal Corporations (5th Ed.) vol. 1, p. 762; 22 R.C.I. pars. 160-162, pp. 483, 484.
"This court has recently stated in no uncertain terms that public officers must use due diligence in discharging their duties, particularly where rights of individuals *57 may be jeopardized by their neglect. And, in the case referred to, this court held that a tax collector had to bear the loss resulting from failure to present, in due time before a bank failed, a check voluntarily received by her for taxes, although there was no duty under the law to receive a check for taxes. See Palm Court Corporation v. Smith (Tax Collector), 103 Fla. 233, 137 So. 234.
"The principal consideration here, however, is the liability of a public officer for the wrongful act of a corporate body of which he is a member, but in which he participated as to the wrongful act complained of. While this question has not often been presented to the courts for adjudication, and the general rule has been understood to be that a public officer, who is a member of a board or body corporate upon which a duty rests, cannot be held liable for the neglect of duty by the body or board of which he is a member, it by no means follows that a public officer may not, upon the principles of the adjudicated cases decided in this state, and in states whose decisions we regard as highly persuasive, be held personally and individually responsible for the acts of public boards or official bodies, so far as he personally joins in and lends his efforts toward the accomplishment of the wrongful acts of the body or board itself as an entity.

* * * * * *
"Official action, the result of performing a certain specific duty arising from designated facts, is a ministerial act. Grider v. Tally, 77 Ala. 422, 54 Am.Rep. 65. Another way of expressing the same thought is that a duty is to be regarded as ministerial when it is a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated; the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion."
Section 255.05, Florida Statutes, 1951, F.S.A., has been on the statute books for many years. It was placed there to protect laborers and materialmen who incorporate their labor and materials in public buildings on which they can have no lien. This section is extremely broad in its scope. It concerns itself with all public buildings and we find nothing in the School Code to even infer that it was not intended to apply to school buildings. On the contrary, section 237.31(4) can, and should, be construed to make this section, 255.05, a part thereof because, in section 237.31(4) it is expressly provided that the contractor shall provide bond "in such amount and for such purposes as [shall be] prescribed by law * * *." (Emphasis supplied.) Nor is the language in section 235.32, supra, in conflict with section 255.05 in any respect. It is supplementary only and adds a requirement that the bond shall be for 100% of the contract price.
It is urged upon us by defendants below that the statute, 255.05, supra, does not place a ministerial duty on the board to require the bond; they say:
"* * *; it does not say that the board of public instruction shall require a person entering into a contract to execute a particular type bond. It was incumbent upon the contractor to furnish the proper bond and of course the school board would have approved of his bond if the bond furnished had complied with the regulations as set out in the School Code. The rules and regulations required of the board of public instruction have been codified in the School Code and conditions for their operation have been specifically outlined. The board of public instruction has fully complied with all requirements of the School Code in the State of Florida and no liability can now be imposed upon them for not conforming with Section 255.05 of the Florida Statutes. * * *"
We wholly disagree with this argument. The provision in the statutes that the bond shall be required before commencing work is patently and clearly the same as saying that the school board shall see to it that the contractor does not begin work until the bond is executed, posted and duly approved. Only it would have such authority. The purpose is quite obviously to protect those who incorporate their labor or material in the structure. If there is *58 any doubt as to the duty of the board in this respect, such doubt is completely dissipated by the concluding two sentences of the section making it the duty of the public body to furnish a copy of such bond to interested persons.
It is therefore our conclusion that it was the mandatory duty of the school board members to see to it that the bond required by said section 255.05 was posted before work was commenced; that the duty to do so was ministerial; that the failure to do so was a breach of the duty to faithfully perform the duties of the office and that persons suffering loss because thereof had a remedy against such board members individually in tort. Having reached this conclusion, we must reverse the cause for further proceedings consistent with this opinion.
The question of whether there are proper parties defendant in the court below to support the judgment prayed for is not presented here and is not passed upon.
Reversed and remanded.
ROBERTS, C.J., MATHEWS, J., and PARKS, Associate Justice, concur.