105 So.2d 190 (1958)
LeRoy COLLINS, Governor of the State of Florida, for the Use and Benefit of Dixie Plywood Company of Tampa, Inc., a Florida Corporation, Appellant,
v.
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, a corporation, et al., Appellees.
No. 352.
District Court of Appeal of Florida. Second District.
September 10, 1958.
*191 Tom Fairfield Brown and Fred T. Saussy, Jr., Tampa, for appellant.
Haskins & Bryant, Sebring, for appellees.
KANNER, Chief Judge.
The trial court granted a motion to dismiss the amended complaint, and thereupon dismissed the action. The appeal is from that ruling.
The Board of Public Instruction of Highlands County on October 26, 1954, entered into a contract for $340,840 with L.W. Ross as general contractor to construct what was designated Woodlawn Elementary School. The action is by a materialman against the sureties of the members of the Board of Public Instruction of Highlands County and the chairman of the board. The theory of the action was that the members of the board failed to perform their ministerial duty of requiring the *192 contractor to furnish a bond conditioned in the manner prescribed by section 255.05, Florida Statutes, F.S.A., so as to protect persons supplying material and labor.
Section 237.31(4) of the school code, Florida Statutes, F.S.A., makes it the duty of the county board of public instruction to require from a school contractor a bond for the faithful performance of his contract as prescribed by law, and section 235.32 of the school code specifies that the amount of the bond by the school contractor shall be one hundred per cent of the contract price. Section 255.05 is the general statute relating to bond requirements of a contractor constructing public buildings.
Section 255.05 about which we are here concerned reads:
"Any person entering into a formal contract with the State of Florida, any county of said state, or any city in said state, or any political subdivision thereof, or other public authority, for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building, or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; and any person, making application therefor, and furnishing affidavit to the treasurer of the State of Florida, or any city, county, political subdivision, or other public authority, having charge of said work, that labor, material or supplies for the prosecution of such work has been supplied by him, and payment for which has not been made, shall be furnished with certified copy of said contract and bond, upon which, said person, supplying such labor, material or supplies shall have a right of action, and may bring suit in the name of the State of Florida, or the city, county, or political subdivision, prosecuting said work, for his use and benefit, against said contractor, and sureties, and to prosecute the same to final judgment and execution; provided, that such action, and its prosecution, shall not involve the State of Florida, any county, city or other political subdivisions, in any expense."[1]
The contract provided that the contractor should furnish all of the materials and labor necessary to perform all of the work; and under article 7 it is provided:
"This contract shall become effective and in full force upon execution of this agreement, concurrently with the delivery of a bond issued by a surety company, licensed to do business in the State of Florida, for one hundred per cent (100%) of the contract price, said bond guaranteeing the performance of this contract and as security for the payment of all persons performing labor and furnishing materials in connection with this contract."

The bond furnished was executed October 28, 1954, by L.W. Ross, general contractor, and Pan American Surety Company, as the principals, to the Board of Public Instruction, Highlands County, Florida, as the obligee in the sum of the contract price. These provisions are contained in the bond:
"Whereas, The Principal has entered into a written contract dated October 26th, 1954, with the Obligee, for the construction of the Woodlawn Elementary School, Sebring, Florida, a copy of which is hereto annexed:

*193 "Now, Therefore, The condition of this obligation is such, that if the Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void, otherwise to remain in full force and effect;"
and also the further provision:
"That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the Obligee herein named; and that the obligation of the Surety is, and shall be construed strictly as, one of suretyship only, shall be executed by the Principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior consent, in writing, of the Surety."
The trial court hinged his determination of the case on two propositions, 1. that the amended complaint did not show that the use plaintiff was unable to collect the debt due, and 2. that the bond, read in its entirety with the contract, did protect laborers and materialmen.
The appellant's position is that the bond was deficient in that it did not contain the statutory obligation, "shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract."
The appellees stand on the theory of the trial judge's ruling and present the further proposition that the bond given shows on its face a bona fide attempt on the part of the board of public instruction to comply with the statute, and that if the bond did not protect the materialman because of a technicality, that was not ministerial but concerned the exercise of judgment
The purpose of the provision contained in section 255.05, that a contractor shall promptly make payments for labor, material, and supplies, is to protect laborers and materialmen whose labor and material are put into public buildings or projects on which they can acquire no lien. A contractor's bond should be construed in the light of this section and must be supposed to accomplish its purpose. See Warren for Use and Benefit of Hughes Supply Co. v. Glens Falls Indemnity Co., Fla. 1953, 66 So.2d 54; and City of Stuart, for Use and Benefit of Florida East Coast R. Co. v. American Surety Co. of New York, 5 Cir., 38 F.2d 193.
As we view it, the heart of this appeal is whether the bond has adequately met the statutory condition involved, and we shall not deal with the other theories advanced. The primary case urged by the appellant is the case of Warren for Use and Benefit of Hughes Supply Co. v. Glens Falls Indemnity Co. In that case, Suwannee County Board of Public Instruction failed to demand and receive from the contractor the bond required by section 255.05. The Supreme Court held that the school board had a mandatory and ministerial duty to see to it that the bond required by section 255.05 was executed, posted, and approved before the work was commenced, and that the failure to perform such duty results in individual tort liability of members of the board.
We have obtained and examined the record in the Glens Falls case. The contract includes no language creating the obligation called for by the statute for protection of a laborer and a materialman. The Glens Falls bond is practically identical in wording with the bond in the instant case, except after the word "annexed" it has the additional words, "and which contract is made a part hereof, as fully as if recited at length herein."
So we see in the Glens Falls case, neither the bond nor the contract has the language included in it to fulfill the statutory obligatory provision. Contrariwise, the language of the contract in the instant *194 case, "This contract shall become effective and in full force upon execution of this agreement, concurrently with the delivery of a bond issued by a surety company, licensed to do business in the State of Florida, for one hundred per cent (100%) of the contract price, said bond guaranteeing the performance of this contract and as security for the payment of all persons performing labor and furnishing materials in connection with this contract," substantially raises the question of the legal sufficiency of the bond. Although this quoted language is not directly written into the bond itself, the bond instrument specifically refers to the "contract of October 26, 1954, for the construction of the Woodlawn Elementary School, Sebring, Florida, copy of which is hereto annexed." The contract was so annexed and there is no dispute about that.
In the case of the City of Ocala for Use of Standard Oil Co. v. Continental Casualty Co., 1930, 99 Fla. 736, 127 So. 326, 77 A.L.R. 8, the action was against the contractor's surety and the contractor to recover for material and services rendered to the contractor in connection with street improvements, which action involved the question of the sufficiency of the bond. In that case, it is stated, quoting from 127 So. at page 328:
"There was no duty or obligation of the surety company to enter into the bond that the statute requires the contractor to execute `before commencing' the `public work.' If a surety company executes a penal bond purporting in terms or in substance or by sufficient reference to be in accordance with or for the purpose of complying with the requirements of the statute in cases of such contracts, as to `additional obligation that such contractor shall promptly make payments to all persons supplying him labor, material and supplies used directly or indirectly in the prosecution of the work provided for in the contract,' the surety company will be liable as provided by the statute. Fulghum v. State, 92 Fla. 662, 109 So. 644;"
and further, on the same page:
"The bond of the surety company in this case does not by its terms or by reference or otherwise indicate that it was given pursuant to, or for the purposes designed by, the statute; and, as the statute does not expressly or impliedly forbid the giving of such a bond as was executed and does not expressly or by intendment make the statutory provisions apply notwithstanding the terms of the bond, the liability of the surety company depends upon the terms of its bond, which do not cover liability for labor, material, and supplies used by contractors in the street improvement provided for in the contract with the city. The bond refers to the contract with the city, but the contract contains no promise to pay for material and labor used under the contract."
In the Ocala case the bond contained no language to meet the requirement to protect the laborers or materialmen, nor was there language in the contract to fulfill this deficiency. However, it is clearly indicated that where a surety company executes a penal bond which appears by sufficient reference to be in compliance with or for the purpose of fulfilling the statutory bond conditions designed to protect laborers and materialmen in cases of public improvement, the surety company will be liable as provided by the statute.
Where a written contract refers to and sufficiently describes another document, that other document or so much of it as is referred to, may be regarded as a part of the contract and therefore is properly considered in its interpretation. Also where a contract expressly provides that it is subject to the terms and conditions of other contracts which are definitely specified, *195 such other contracts must be considered in determining the intent of the parties to the transaction. 7 Fla.Jur., Contracts, section 79, p. 145. The bond here specifically referred to and described the contract and expressly stated that the contract was annexed to it. The contract was so annexed. Under the stated principles, we hold that the language contained in the surety bond here sufficiently by reference incorporates into the bond the language of the contract hereinabove quoted from article 7.
We now consider whether the quoted language of the contract as it is connected with the bond is sufficient to create the obligation under the statute to protect the laborer and materialman.
In the case of Fulghum v. State, 1926, 92 Fla. 662, 109 So. 644, 645, an action to recover under a surety bond for a public work project, the bond itself contained the condition that if the principal "shall promptly pay all just claims * * * for labor and materials incurred by said principal in or about the construction of improvement contracted for, then this obligation to be void, otherwise to be and remain in full force and virtue in law." The Supreme Court held in that case that the language so employed sufficiently afforded protection to persons supplying labor and material in the prosecution of the public work project. In that case it was held that the test by which the adequacy of a contractor's surety bond is to be determined is whether the obligation required by the statute has been created or imposed, and is not determined by the formula of words used to express that obligation.
By comparison and analysis, the language contained in the bond in the Fulghum case is no stronger by intendment and in meaning than that expressed in the contract in the instant case as applied to the bond statute. As seen, the language in the bond in the Fulghum case was held to be sufficient to bring it within the purview of the statute so as to protect the laborer and materialman.
The case of Hartford Accident & Indemnity Co. v. Board of Education, 1926, 15 F.2d 317, Circuit Court of Appeals, Fourth Circuit, West Virginia, was based upon claims assigned to the board and involved a situation very similar to the one we have here. The contract for construction of a school building set forth that the contractor should provide and pay for all labor and material necessary for the execution of the work, and that the contractor should furnish a guaranty company's bond "to guarantee the faithful performance of the contract and the payment of all subcontractors and labor and material bills." This bond was required not only by the terms of the contract, but also by the statute of West Virginia, section 12, chapter 75 of the Code of West Virginia. This section of the code provided that where a contractor was awarded a contract for the construction of a public building, quoting from 15 F.2d at page 318:
"* * * that said contractor shall cause to be executed and delivered to the secretary of said board or other legal body, or other proper and designated custodian of the papers and records thereof, a good, valid, solvent and sufficient bond, in the penal sum equal at the least to the reasonable cost of the materials, machinery, equipment and labor required for the completion of said contract, and conditioned that in the event such contractor shall fail to pay in full for all such materials, machinery, equipment and labor used by him in the erection, construction, improvement, alteration or repair of such public building or other structure, or building or other structure used or to be used for public purposes, then said bond and the sureties thereon shall be responsible to said materialmen, furnisher of machinery or equipment, and furnisher or performer of said labor, or their assigns, for the full payment of the full value thereof."
*196 The contractor's bond incorporated the provisions of the contract into it by use of the language, "A copy of which (i.e., the contract) is or may be attached hereto, and is hereby referred to and made a part hereof." The condition of the bond was that "the principal shall indemnify the obligee against loss or damage directly caused by the failure of the principal faithfully to perform the contract," and this was followed by a provision that the bond was executed upon certain express conditions, among which was the following:
"11. No right of action shall accrue upon or by reason hereof, to or for the use or benefit of anyone other than the obligee named herein; and the obligation of the surety is and shall be construed strictly as one of suretyship only."
The sufficiency of the bond was challenged on the ground that the bond did not guarantee the payment of claims of laborers and materialmen but merely indemnified the plaintiff board of education against loss which it might sustain from breach of contract on the part of the contractor. On pages 319 and 320 of 15 F.2d, it is stated:
"When the bond is read in connection with the contract, which is expressly made a part of it, we have not a mere indemnity agreement guaranteeing plaintiff against loss from breach of contract on the part of the contractor, but a contract of suretyship, in which defendant undertakes that the contractor will faithfully perform his contract and will pay all subcontractors and labor and material bills. The bond itself provides that it shall be construed as one of suretyship; and the contract (by reference made a part of the bond) provides not only that the contractor shall provide and pay for all labor and materials, but also that the bond to be furnished shall `guarantee the faithful performance of the contract and the payment of all subcontractors, and labor and material bills.'"
This case holds, like that of the Florida jurisdiction, that no lien can be acquired against a public building under the mechanic's lien statute, that the purpose of the West Virginia statute is manifestly intended to require a bond for the protection of those furnishing labor and material on public buildings, and that the bond must be construed in the light of the statute. It is then stated on page 320 of 15 F.2d:
"When the bond is so construed, and the provisions of the contract are read into it, it is clear that it guarantees the payment of the claims of laborers and materialmen. To hold otherwise would deny all force and effect to the provision of the contract incorporated in the bond, that it should `guarantee the faithful performance of the contract and the payment of all subcontractors and labor and material bills,' would convict the plaintiff of violating the statute above quoted, and would place the defendant in the absurd position of executing a bond in violation of the terms of a contract and at the same time incorporating the contract in the bond."
It is to be observed in the West Virginia case that the language concerning the payment for labor and material was contained in the contract; and that the appeals court, by reason of the language in the bond, making the contract a part of it, interpreted the bond in the light of its connection with the contract. The wording in the instant contract, as indicated by the West Virginia case, is not a mere indemnity, but a contract of suretyship in which the surety undertook that the contractor would faithfully perform his contract and would pay all persons supplying labor and materials.
*197 The provision of the bond expressly provides that the obligation of the surety shall be construed strictly as one of suretyship only, just the same as in the West Virginia case. Generally the accepted meaning of a "surety" is that he is an insurer of the debt or the obligation, and he may be sued as a promisor, and he becomes a creditor of his principal upon the discharge of the obligation. Scott v. National City Bank of Tampa, 1931, 107 Fla. 810, 139 So. 367.
It is to be noted that the word "security" is employed in the quoted part of the contract. The word, "security," has a defined connotation as one who becomes the surety for another, or who engages himself for the performance of another's contract; one who becomes responsible for the obligation of another; a surety; and may be employed in the sense of surety, that is, a bond with surety or sureties. 79 C.J.S., pp. 941, 942.
The cases of J.B. McCrary Co. v. Dade County, 1920, 80 Fla. 652, 86 So. 612; Fulghum v. State, 1926, 92 Fla. 662, 109 So. 644; City of Ocala for Use of Standard Oil Co. v. Continental Casualty Co., 99 Fla. 736, 127 So. 326, 77 A.L.R. 8, and other like cases have consistently held that all bonds for the performance of a contract for the construction of any public work shall contain a provision that the contractor or contractors shall promptly make payments to all persons supplying labor or material in the prosecution of the work provided for in the contract in order to safeguard the laborer and materialman. So it is, unless this condition is contained in the usual penal bond, the obligation of the surety is to secure the performance of the contract for the benefit of the governmental agency and does not afford protection to the laborer or materialman.
We recognize and respect these decisions. We are, however, irresistibly impelled to the judgment that the instant case is clearly distinguishable from these other cases as hereinbefore demonstrated. In the instant case a sufficient reference to the contract is made in the bond, thereby incorporating the applicable provisions of the contract into the bond. The bond itself provides that it should be construed as one of suretyship only. The quoted wording employed in the contract sufficiently meets the test of the statutory requirement so as to afford protection to persons supplying labor and material in the prosecution of the public work provided for under the contract.
In instances where a person has not been paid for labor, material, or supplies for any public work, section 255.05 provides that such person supplying them shall be furnished with a certified copy of the contract and bond upon which said person supplying such labor, material, or supplies shall have a right of action and may bring suit in the name of the State of Florida, the city, county, or political subdivision prosecuting said work for his use or benefit against a contractor and sureties, and to prosecute the same to final judgment and execution. See J.B. McCrary Co. v. Dade County, supra.
We are not confronted with the question of whether all indispensable parties were made parties to this action. The Pan American Surety Company, the surety who furnished the contractor's bond, is not a party to the action. Our decision is that, on the face of the record here, only as between the parties to this suit, the judgment of the trial court as indicated in this opinion, should be and is hereby affirmed.
Affirmed.
SHANNON, J., and STEPHENSON, GUNTER, A.J., concur.
NOTES
[1] Emphasis supplied in quoted matter.