GROSS, Judge,
dissenting.
The issue in this case is whether the Bro-ward County Prevailing Wage Ordinance was included by reference in the development agreément between Arena Development Company and Broward County pertaining to the construction of the Broward County Civic Center. Because of the overall structure of the deal, the wording of the ordinance, and the County’s nullification of the ordinance’s trigger mechanism, I do not find that the requirements of the prevailing wage law became part of the agreement between the parties. Mechanics and laborers who have suffered a loss as a result of the County’s failure to follow its own ordinance have a remedy against the County.
The first section of the County’s Prevailing Wage Ordinance provides:
(a) Every construction contract in excess of two hundred fifty thousand dollars ($250,000.00) to which Broward County is a party shall include a provision that the rate of wages and fringe benefits, or cash equivalent, for all laborers, mechanics and apprentices employed by any contractor or subcontractor on the work covered by the contract shall be not less than the prevailing rate of wages and fringe benefit payments or cash equivalence [sic] for similar skills or classifications of work as established by the Federal Register, in Broward County, Florida.
Broward County, Fla., Code § 26-5 (effective Nov. 28,1983).
The development agreement, entered into in June, 1996, is a minutely detailed 45 page document with 37 pages of attached exhibits. Nowhére in the agreement is there any mention of the prevailing wage ordinance. In conjunction with the execution of the agreement, the Broward County Commission passed Resolution 96-0538, which declared that a “public emergency exists with regard to the design and construction of the Arena.” The resolution noted that the County would
suffer a substantial financial loss in the event the agreements for the Arena are not drafted to maximize the likelihood that the project will be complete by October 1998. The failure to complete construction by this deadline will result in millions of dollars of additional costs for the construction and financing of the Arena. Any additional delay in the commencement of *978 construction of the Arena will result in operating losses for the Team and County and significantly change the economic structure and feasibility of the project.
To ensure completion of the arena by October, 1998, the resolution stated the county’s finding that it was necessary to enter into an agreement with a “development company having a common ownership with the [Florida Panthers], which requires the development company to select and hire a team responsible for the design and construction of the Arena.” The resolution waived the competitive bidding requirements of the Bro-ward County Procurement Code and section 287.055, Florida Statutes (1995), the “Consultants’ Competitive Negotiation Act.” In shaping this deal, the parties created something vastly different than the ordinary government construction project.
After construction had begun, the County took the position that its prevailing wage ordinance applied to the project. In January, 1997, Arena Development filed an action in the circuit court seeking a declaration that the prevailing wage ordinance did not apply to the development agreement. The trial judge determined that the agreement was a “construction contract” within the meaning of section 26-5(a) of the ordinance. The court held that the ordinance was included by reference in the agreement by way of section 3.2, which required that the project be designed “in an orderly, expeditious and efficient manner in accordance with the Applicable Laws.” Section 1.1 of the agreement defined “Applicable Law” as including any ordinance in effect as of the date of the agreement.
The wording of the prevailing wage ordinance does not indicate that it is self-executing. Section 26-5(a) states that every contract in excess of $250,000, to which the county is a party, “shall include a provision” pertaining to prevailing wages. The ordinance does not say “shall be deemed to include a provision.” As written, the ordinance is a directive to county agencies engaged in the disbursement of county funds that they are required to place certain stipulations in construction contracts for the benefit of mechanics and laborers. In the past, the county has not relied on “applicable laws” clauses to insert the prevailing wage ordinance into a contract. The evidence below was that in another large construction contract, the County included a specific provision regarding the prevailing wage ordinance, even though that contract contained general language requiring compliance with applicable laws, as did the development agreement in this case.
The language of the extensive development agreement emphasizes that its express provisions, and nothing else, define the agreement of the parties. Section 14.18 states that the development agreement, along with other enumerated documents, “contains the entire understanding between the parties with respect thereto.” In section 13.2.2, the County warrants that the performance of the agreement “will not violate ... the County’s code of ordinances” and vests the developer with
all rights required by the Project Developer in order to perform its obligations hereunder, including, without limitation, the right directly to negotiate, procure and enter into binding purchase, supply and service Contracts for the design, construction and equipping of the Project and the Project Improvements, without further involvement by the County except as expressly provided in this Agreement.
(Emphasis supplied). The concept of an implied duty regarding prevailing wages is at odds with the contractual requirement that such a crucial aspect of the developer’s performance be expressly set forth in the document. In addition, where the parties’ payment obligations are so painstakingly delineated in the development agreement, it is illogical to say that the parties had a meeting of the minds on the prevailing wage issue, but were willing to hammer out the specific numbers at some unspecified future time, or even worse, as the county argues, were content to have the matter “litigated in an appropriate forum.”
Significantly, the county’s enactment of Resolution 96-0538, which dispensed with competitive bidding, removed the method by which the prevailing wage ordinance states that it is to be implemented. Section 26-5(b) of the ordinance provides:
*979 The prevailing wage rate and fringe benefit payments to be used in implementation of this section shall be those last published by the U.S. Department of Labor in the Federal Register •prior to the date of issuance of specifications by Broward County in connection with its invitation for bids.
(Emphasis supplied). It is difficult to see how the prevailing wage ordinance is to be read into the development agreement since a crucial aspect of its implementation was eliminated by a resolution crucial to the entire transaction. Without the specificity of what wage rate is to apply, the ordinance cannot fulfill one of the functions of prevailing wage laws— to allow a contractor to know “definitely in advance of submitting his bid what his approximate labor costs will be.” Universities Research Ass’n, Inc. v. Coutu, 450 U.S. 754, 776, 101 S.Ct. 1451, 1464, 67 L.Ed.2d 662 (1981) (internal citation omitted); Cullipher v. Weatherby-Godbe Constr. Co., Inc., 570 S.W.2d 161, 164 (Tex.Civ.App.1978).
The County argues that ruling for Arena Development would “require a conclusion that the intent behind the Prevailing Wage Ordinance was to allow the County to simply ignore the ordinance whenever it chooses to do so.” This argument incorrectly assumes that the county is without liability when it ignores its own prevailing wage ordinance. From the standpoint of mechanics and laborers, prevailing wage laws are “designed to protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the área.” Coutu, 450 U.S. at 773, 101 S.Ct. at 1462-63 (internal citation omitted). The ordinance imposes a ministerial duty upon the county to comply with the prevailing wage ordinance. The Florida Supreme Court has defined a ministerial duty as
a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated; the duty to perform under the conditions specified not being dependent upon the officer’s judgment or discretion.
First Nat'l Bank of Key West v. Filer, 107 Fla. 526, 145 So. 204, 207 (1933). Cases from both the supreme court and this court hold a governmental entity liable to those injured as a result of the entity’s violation of a ministerial duty.
In Warren v. Glens Falls Indemnity Co., 66 So.2d 54 (Fla.1953), the Suwanee County Board of Public Instruction entered into a contract to construct an elementary school budding without demanding or receiving from the contractor the bond required by section 255.05, Florida Statutes (1951). The contractor defaulted on the project. A supplier unable to collect for materials furnished and utilized in the project brought suit against the sureties of the board members on the theory that the Board’s violation of its ministerial duty rendered it liable to the supplier. The supreme court ruled that section 255.05 applied to the project and that the board had a ministerial duty to ensure that a contractor “does not begin work until the bond is executed, posted and duly approved.” Id. at 57. For losses caused by the violation of this duty, the supreme court held that aggrieved parties had a remedy against the board members “individually in tort.” Id. at 58.
After the passage of section 768.28, Florida Statutes (1995), this court applied Warren in affirming a judgment against a county that had failed to comply with section 255.05, Florida Statutes (1991). Palm Beach County v. Trinity Indus., Inc., 661 So.2d 942 (Fla. 4th DCA 1995), concerned a construction contract where the county “did not require the contractor ... to submit a payment and performance bond, under section 255.05(l)(a).” Id. at 944. The contractor did not pay a subcontractor which had provided materials to the project. The subcontractor obtained an uncollectible default judgment against the contractor. The subcontractor then filed an action against Palm Beach County, alleging that the county was liable for failing to require the contractor to post the bond required by statute. Based on Warren, this court affirmed a summary final judgment against the county in favor of the subcontractor.
I see no reason to distinguish Broward County’s duty to mechanics and laborers under its prevailing wage ordinance from that *980 imposed upon public entities by section 255.05 with regard to subcontractors and suppliers. Any worker aggrieved by the County’s failure to follow its prevailing wage ordinance has a cause of action against the County for the amount by which the prevailing wage exceeds that which is paid. The result reached by the majority allows the County to amend a contract after the fact to force a party to comply with a term which was not negotiated and which did not become a part of the bargain struck between the parties.